**BYARS v. MOORE–McCORMACK LINES, Inc.**

**SAME v. UNITED STATES et al.**

**Nos. 292, 293.**

Circuit Court of Appeals, Second Circuit.

May 31, 1946.

Samuel M. Cole, of New York City (Nathan Baker, of Hoboken, N. J., and Benjamin H. Siff, of New York City, of counsel), for William M. Byars, plaintiff-libellant-appellant.

Joseph K. Inness, of New York City, for Moore-McCormack Lines, Inc., defendant-appellee, and for United States of America and War Shipping Administration, respondents-appellees.

Before AUGUSTUS N. HAND, CHASE, and CLARK, Circuit Judges.

PER CURIAM.

This is an appeal by the plaintiff and libellant who sustained injuries by falling through a defective hatch on the Steamship Pelotasloide, which had been chartered under a bare boat charter to the United States, while he was engaged in setting up a beam across an opening in the ship's deck in connection with the construction of an ammunition compartment. The plaintiff sued Moore-McCormack Lines, Inc., agents for the vessel at law and also filed a libel in admiralty against the United States and the War Shipping Administration under the bare boat charter made by Lloyd Brazilerio to the latter. While the crew and officers remained on board, because they were Brazilian citizens and could not be discharged under our naturalization laws, no regular crew watches were kept and the ship was in possession of East Coast Shipyards, an independent contractor employed by the War Shipping Administration for the purpose of making repairs and building the ammunition chamber that has been referred to. The contract specified among other repairs the renewal of 50% of the wooden covers of the hatches. The independent contractor had the benefit of a survey of the defective hatches made by one Binder, port engineer

of the Moore-McCormack Lines, Inc., a surveyor of the War Shipping Administration, and a representative of Lloyd Brazilerio, the owner of the vessel, and contracted to repair them. There is no reason to suppose that the officers and crew knew how far the hatches were defective or could tell which one of the workmen would be assigned to construct the ammunition compartment, or that it was the business of the officers to safeguard any of the contractor's men against dangers in connection with the defective hatches that were to be repaired. Their employer had notice that 50% of the wood in each was unsafe. If different contractors had been employed to repair the hatches and to construct the compartment, it may be that there would have been a duty on the part of the bare boat charterer and its agents to give notice to the contractor building the compartment that the hatches to be repaired by the other contractor were defective and of that contractor to notify or otherwise guard its employees against defective hatches which they would have been likely to step on in carrying out the construction work. But there was no such duty on the part of the bare boat charterer or its agents where a single contractor had both to repair the hatches and to construct the compartment and it had been given notice of defects in the hatches. In the case at bar it would seem to have been the duty of the contractor to repair the hatches that were defective before its workmen engaged in constructing the compartment were likely to step on them or in the alternative to see to it that any of its workmen likely to use the hatches were warned of their condition.

The bare boat charterer and his agents were not liable for various reasons. First, because the independent contractor had been warned of the defective condition of the hatches and had been given possession of the ship in order to repair them. Second, because none of the parties sued had any reason to assume a separation by the contractor between Byars and his co-employees in their work on hatch covers and construction of the ammunition compartment and had no reason to know which workman would be assigned any particular job—whether of repair or construction.

In Kowalsky v. Conreco Company, 264 N. Y. 125, 190 N.E. 206, 207, Conreco Company was the owner of certain premises on which the City of New York had placed a fire violation. Conreco Company employed Joseph Moreng Iron Works to do the necessary work to remove the said violation. Joseph Moreng Iron Works in turn employed one Alexander John as a subcontractor to do the iron work involved. During the course of the work, some windows in the premises became broken and John employed Victory Glass Company to install new window panes where required. The plaintiff's decedent was a glazier employed by Victory Glass Company who was killed while replacing a broken window pane as ordered, through leaning against a defective shutter which constituted part of the fire violation which John had been engaged to repair. The court said:

"Moreng sublet this contract to Alexander John, doing business under the tradename and style of Jennings & John. Had John or his men been hurt by an unsafe or insecure shutter or bar-fastening, the owner of the building would not have been liable. He had employed them to make the repairs, to remove the danger, to fasten and secure the bars and shutters. No responsibility rests upon an owner of real property to one hurt through a dangerous condition which he has undertaken to fix. The duty of an owner to repair implies that the workman employed to make the repair assumes the risk. * * *

"An employee cannot recover for injuries received while doing an act to eliminate the cause of the injury. As was said in Mullin v. Genesee County El. L., P. & Gas Co., 202 N.Y. 275, at page 279, 95 N.E. 689, 690: 'The reason for this exception to the general rule is that it would be manifestly absurd to hold a master to the duty of providing a safe place when the very work in which the servant is engaged makes it unsafe. If a man is engaged in tearing down a house he is constantly exposed to dangers of his own creation; and in such a case all those who are engaged in the same common purpose are fellow-servants for whose negligence in executing the details of the work the master is not liable, even though

"the work is done in successive stages, different parts thereof being devolved upon different persons, and the labor performed by one set of employees being prior in time to that performed by another set." ' See, also, Hess v. Bernheimer & Schwartz Pilsener Brewing Co., 219 N.Y. 415, 114 N.E. 808.

"Therefore, if John or his employee had fallen out the window because of a defective shutter bar, no recovery could have been had against the owner. The defect John was hired to remove. Had he failed to do so, it was his own fault; or had he fallen in doing any other part of the work, it was a danger he and his employees assumed.

"John undertook to repair all the shutters, bars, nuts, bolts, fastenings to the rear windows of the building, and in doing so broke the glass in some of the windows. He had not finished his work as it had not been accepted by the fire department, the owner, or his contractor. When notified about the broken glass, he said he would fix it at once, and undertook to do so. He sent Meyer Kowalsky who, while putting a pane of glass in a window on the seventh floor, leaned against or took hold of the cross-bar, which gave way, causing his death. This action is brought by Kowalsky's administratrix to recover damages for the negligence. The negligence, if any, was that of John, the subcontractor who had contracted to fix the window bars, and who from the evidence apparently failed to do so. The owner is not liable for this unfortunate accident on the ground that he had furnished John and his employees or subcontractor an unsafe place to work, as Kowalsky, John's employee or subcontractor, was killed through defects which John was in the act of repairing. Neither is the owner liable for the negligence of John in doing or failing to do his work; Kowalsky was on the premises to help John complete it so as to remove fire department violations and get his pay."

Under the circumstances disclosed in the record there was no liability of the defendant Moore-McCormack Lines, Inc., or the respondents United States of America, or its agency War Shipping Administration to the plaintiff-libellant William M. Byars.

Judgment and decree affirmed.