WALLACE E. CADDY *vs.* TEXACO, INC.

Suffolk. December 5, 1972. — February 5, 1973.

Present: TAURO, C.J., REARDON, BRAUCHER, HENNESSEY, & KAPLAN, JJ.

*Seaman. Vessel. Admiralty. Negligence,* Toward seaman, Vessel, Assumption of risk. *Proximate Cause.*

The defence of assumption of risk is not available in an action by a seaman to recover damages for personal injuries either under the Jones Act, 46 U. S. C. § 688, or for breach of the warranty of seaworthiness under general maritime law. [38–39]

Where the plaintiff, an employee of the defendant shipowner, was injured after slipping on oil which he was responsible for cleaning from a deck, the judge erred in directing verdicts for the defendant on a count arising under the Jones Act, 46 U. S. C. § 688, and a count for breach of warranty of seaworthiness. [39–40]

TORT AND CONTRACT. Writ in the Superior Court dated February 6, 1969.

The action was tried before *Forte,* J.

*Thomas J. Hunt* for the plaintiff.

*Blair L. Perry* for the defendant.

REARDON, J. The plaintiff, a wiper in the engine room of the S. S. Texaco New Jersey, fell on oil on the deck of the engine room, sustaining injuries for which he brought this action of tort and contract. The declaration originally contained four counts, two of which were waived. There is now left a claim in count 1 for personal injuries under the Jones Act, 46 U. S. C. § 688 (1964), and a claim in count 2 for personal injuries for a breach of the warranty of seaworthiness under the general maritime law. The defendant's answer included a general denial, and alleged contributory negligence and assumption of

the risk. At the conclusion of the plaintiff's case the trial judge granted the defendant's motion for directed verdicts on counts 1 and 2. The case is here on exceptions to that action.

On the day when he sustained his injuries the plaintiff reported to work at 8 A.M. and as usual emptied rubbish buckets and cleaned oil from the deck in the area of his station, one of his duties, until about 8:45 A.M. He then commenced to clean the walls of the engine room as he had been directed and did so until 2 P.M., changing the water in his buckets three or four times. To make these changes he had "to go to the deck above which had more than one access route." He fell when returning to the deck on which he was working, having arrived at the bottom of a "stairway." He landed on his back and saw upon getting up "his heel mark in the accumulated oil . . . [which] was dripping from a generator located above the deck." This condition had existed since the plaintiff joined the vessel, and there had been complaints by him and others prior to his accident.

This case is similar to the 1966 cases of *Bono* v. *Ocean Wave, Inc.* 350 Mass. 470, and *Boudreau* v. *Boat Andrea G. Corp.* 350 Mass. 473. The *Bono* case in particular is quite close on its facts. The declaration in that case contained two counts like those before us. There had been complaints about a condition affecting the engine and the clutch of the vessel. The condition was not repaired and eventually caused the plaintiff's injuries. The court held that there was error in directing a verdict on each count, and the principles it discussed are applicable in this case.

Initially it may be stated that State and Federal courts have concurrent jurisdiction "in actions to recover under the Jones act and general maritime law, but Federal principles of law apply." *Keough* v. *Cefalo,* 330 Mass. 57, 60. *Engel* v. *Davenport,* 271 U. S. 33, 37. Unseaworthiness is technically a nonjury admiralty cause of action, but in a jury case the issue may be submitted to the jury when joined with an issue arising under the same facts under

the Jones Act.  *Fitzgerald* v. *United States Lines Co.* 374 U. S. 16, 18.

The Jones Act provides that "[a]ny seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply."  It thus incorporates the provisions of 45 U. S. C. §§ 51–60 (1964) (the Federal Employers' Liability Act), and, as was stated in *Rogers* v. *Missouri Pac. R. R.* 352 U. S. 500, 506: "Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence."  It was open to the jury to find in this case causal connection between the dripping of oil, the knowledge of the plaintiff's superiors on the vessel of it, the failure to take steps to remedy the condition, and the plaintiff's fall and injury.  Furthermore, the plaintiff, having received instructions to do the work which he was doing, which only in part was concerned with cleaning up oil and working with the available equipment, was not obliged to protest the procedure which he was instructed to follow.  See *Ballwanz* v. *Isthmian Lines, Inc.* 319 F. 2d 457 (4th Cir.), cert. den. sub nom. *Isthmian Lines, Inc.* v. *Ballwanz,* 376 U. S. 970.  In addition, ever since *Socony-Vacuum Oil Co.* v. *Smith,* 305 U. S. 424, it has been clear that contributory negligence if shown is not a bar to recovery by a plaintiff claiming under the Jones Act, but goes only to mitigation of damages.  Also, 45 U. S. C. § 54 (1964), provides in part, "In any action brought against any common carrier . . . such employee shall not be held to have assumed the risks of his employment in any case where such injury or death resulted in

whole or in part from the negligence of any of the officers, agents, or employees of such carrier." It is clear that this statute has abolished the defence of assumption of the risk in the actions to which it applies, *Tiller* v. *Atlantic Coast Line R.R.* 318 U. S. 54, and the style is applicable here, as indicated above.

The defendant argues that the plaintiff cannot recover for injuries caused by a defect which he had been hired to remedy. This contention is, however, merely a new guise for the old doctrine of assumption of the risk. Furthermore, the cases cited by the defendant are inapposite. None involved a seaman claiming under the Jones Act for injuries sustained in the normal course of his duties while at sea. *De La Pena* v. *Moore-McCormack Lines, Inc.* 84 F. Supp. 698 (S. D. N. Y.), involved a suit in admiralty brought by the employee of an independent contractor hired to clean a hold of the ship who tripped on a pile of iron bars and fell into an open trench around a hatch. The court dismissed the libel, finding that there was no negligence in leaving the trench uncovered, and that it was open, obvious, and not a dangerous condition. In *Byars* v. *Moore-McCormack Lines, Inc.* 155 F. 2d 587 (2d Cir.), an employee of an independent contractor hired to repair defective hatches fell through one of the hatches. He sued the agents for the ship at law, and the United States and the war shipping administration which had chartered the boat in admiralty. The trial court dismissed the action, and the Circuit Court of Appeals affirmed. *Kowalsky* v. *Conreco Co. Inc.* 264 N. Y. 125, is entirely inapplicable since it involved injuries sustained by a workman making repairs on a building. In *Becker* v. *Waterman S.S. Corp.* 179 F. 2d 713 (2d Cir.), the court noted that the basis of the *Byars* and *Kowalsky* cases was the doctrine of assumption of the risk, and said that since assumption of the risk was not a defence to an action under the Jones Act, a seaman who slipped on oil in a tank he was responsible for cleaning could recover. Pp. 714–715.

The issue of unseaworthiness of the vessel should also

have been submitted to the jury. As the plaintiff has indicated, the shipowner has an absolute duty to furnish a seaworthy vessel. *Mitchell* v. *Trawler Racer, Inc.* 362 U. S. 539, 547. This duty "is essentially a species of liability without fault, analogous to other well known instances in our law. . . . It is a form of absolute duty owing to all within the range of its humanitarian policy." *Seas Shipping Co. Inc.* v. *Sieracki,* 328 U. S. 85, 94–95. It suffices if the vessel is proved unseaworthy with respect to the person injured. *McAllister* v. *Magnolia Petroleum Co.* 357 U. S. 221, 227.

The defendant argues that the claim for unseaworthiness is barred by the fact that the plaintiff was charged with eliminating the condition which caused his injuries. Again, however, the cases are distinguishable as they all involved employees of independent contractors working while the ship was docked. See *Bruszewski* v. *Isthmian S.S. Co.* 163 F. 2d 720 (3d Cir.), cert. den. 333 U. S. 828, and *Mesle* v. *Kea S.S. Corp.* 260 F. 2d 747 (3d Cir.), cert. den. sub nom. *Kea S.S. Corp.* v. *Mesle,* 359 U. S. 966. To apply the rule of these cases to that before us would ignore the general rule that seamen do not assume the risk of injury resulting from the failure of the shipowner to provide a seaworthy vessel. 79 C. J. S., Seamen, § 200 (a). The better view, in our opinion, is that expressed by the court in *Dixon* v. *United States,* 120 F. Supp. 747 (S. D. N. Y.) (affirmed on this point, 219 F. 2d 10 [2d Cir.]), holding that a seaman injured by a fall due to defective rungs on a ladder he had been ordered to inspect might recover. The court said, "To carve out an exception to a shipowner's liability to his crewmen for unseaworthiness based upon assumption of risk would be vitalizing a defense which the Supreme Court has consistently rejected through the years." P. 751.

It was therefore error to direct verdicts for the defendant on both counts.

*Exceptions sustained.*