■ S.M. Pires et al., Respondents, v Frota Oceanica Brasileira, S.A., et al., Appellants, et al., Defendants. S.M. Pires et al., Respondents, v Frota Oceanica Brasileira, S.A., Appellant, et al., Defendants.—Order, Supreme Court, New York County (Edward J. Greenfield, J.), entered June 11, 1987, which denied defendants-appellants' motion for summary judgment dismissing the amended complaint, unanimously reversed, on the law, the motion granted and the first, second and fourth causes of action in the amended complaint dismissed, without costs.

Judgment, Supreme Court, New York County (Edward J. Greenfield, J.), entered October 21, 1988, upon a special jury verdict in favor of plaintiff S.M. Pires, solely on his cause of action for maintenance and cure against defendant Frota Oceanica Brasileira, S.A., in the sum of $1,323,666.70 (less $10,000 credited pursuant to stipulation of the parties) with interest to the verdict totaling $126,887.83 and interest from the verdict to October 20, 1988 totaling $39,031.10 together with costs and disbursements, unanimously modified, on the law, to delete the award of $126,887.83 in prejudgment interest and otherwise affirmed, without costs.

Plaintiffs allege that on December 11, 1975, several hours after the Brazilian cargo vessel M/V *Frotaleste* docked in the Port of Galveston, plaintiff S.M. Pires, a merchant seaman employed as a wiper on the ship, went ashore to buy work gloves which were not available on board and were necessary for him to avoid skin burns on his hands from solvents used in the course of his work. At about 8:15 P.M., while walking south on 37th Street, which bisected a railroad yard, he was struck by a railroad hopper car, which was standing on and partially blocking 37th Street. The accident occurred as plaintiff was crossing the tracks when, suddenly and without warning, the railway car was caused to move backwards by a locomotive owned and operated by the Port of Galveston, which was engaged in the process of making up a train. As a result, plaintiff sustained severe and permanent injuries resulting in the amputation of his right leg.

Assuming the truth of the above allegations and assuming, for purposes of this motion, that defendants-appellants, individually or collectively, engaged in the operation of M/V *Frotaleste* and are, therefore, Jones Act (46 USC § 688) employers within the meaning of *Hellenic Lines v Rhoditis* (398 US 306) and its progeny and that plaintiff was on ship's business at the time of the accident, defendants-appellants are, nevertheless, entitled to summary judgment dismissing the causes of action against them.

"Although an injury occurring ashore may be in the course of the seaman's employment, he cannot recover, in a Jones Act cause of action, unless he proves that the injury was caused by the negligence of any of the officers, agents or employees of the shipowner, for negligence of the shipowner or his agents is the gravamen of the Jones Act." (2 Norris, Law of Seamen § 30:31, at 439 [4th ed].)

Viewing plaintiffs' allegations in their most favorable light, we are left with the alternative theories that the *Frotaleste* was unseaworthy because it did not provide protective gloves for plaintiff, that he was therefore compelled to go ashore on his own to buy them, and that, in permitting plaintiff to go ashore in a port with which he was unfamiliar, the ship's officers were negligent in not warning plaintiff of the dangers inherent in a railyard and in not providing him with · a flashlight with which to traverse the darkened port area.

However, in order to sustain a cause of action for negligence, even one judged by the liberal standards of the Jones Act under which any negligence on the part of an employer,

however slight, is sufficient to fix liability for a seaman's injuries, there must be a causal relationship between the alleged negligence and such injuries. (2 Norris, Law of Seamen, *id.*, § 30:34.) Thus, in order to recover under the Jones Act, a seaman must prove the existence of a duty, the negligent violation of this duty by his employer and a causal relationship of the violation to the injury sustained *(id.*, at 460).

In the instant case, there is neither a sufficient showing of any violation of defendants-appellants' duty of care nor any evidence that such violation, if any, was the proximate cause of plaintiff's injuries. A very similar situation was presented in *Wheeler v West India S. S. Co.* (103 F Supp 631, *affd* 205 F2d 354, *cert denied* 346 US 889), where a seaman was returning at 2:00 A.M. from shore leave to his ship, which was docked at the end of a viaduct. It was very dark at the time and, as he jogged along to catch up with his shipmates, he was struck by a tender attached to a locomotive which was coasting backwards down the viaduct. As a result, the seaman lost both legs. In setting aside a jury verdict in favor of the plaintiff and entering judgment for defendant, the court concluded that even if an inspection of the viaduct by the ship's master at the time of docking would have disclosed that the walkways were damaged, that the railroad tracks were set flush with the viaduct's surface, that there were railroad cars on those tracks at the viaduct's offshore end and, possibly, that the viaduct lacked lighting facilities, such inspection would not have disclosed that a locomotive would be operating thereon, negligently or otherwise, at night. Likewise, in the instant case, even if it were found that the *Frotaleste* was unseaworthy or the shipowners were negligent in sending plaintiff ashore in an unfamiliar port at night without a flashlight, there is no evidence from which a jury could reasonably conclude that due diligence on the part of the shipowners or their employees could have prevented the allegedly negligent operation of the locomotive by the Port of Galveston. The contention that plaintiff was ashore on ship's business rather than for his own purposes does not alter the applicable standards of care or the requirement of a causal relationship between any negligence and plaintiff's injuries. Absent such causal relationship, plaintiff's causes of action for negligence under the Jones Act or, in the alternative, under the maritime law concept of unseaworthiness, as well as his wife's cause for loss of consortium, must fall.

As to plaintiff's recovery for maintenance and cure, a no-

fault concept, we find no reason to disturb the trial court's finding that differences between Brazilian law and United States law should be disregarded because Brazilian and United States law on the subject are substantially identical, which conclusion was based on competent evidence at trial and in posttrial submissions. The record also supports the jury's award of $957,666.70 for future maintenance and care as an amount for a period, albeit lengthy, which can be definitely ascertained *(see, Calmar S. S. Corp. v Taylor,* 303 US 525, 531-532) and is sufficient to allow the plaintiff to be "so far cured as possible". *(Farrell v United States,* 336 US 511, 518.)* Similarly, the jury's finding that the shipowner willfully, callously or arbitrarily withheld maintenance and cure was primarily factual in nature and was clearly not erroneous *(see, Legros v Panther Servs. Group,* 863 F2d 345, 352). However, since the question of prejudgment interest, a factual issue in admiralty cases, was not presented to the jury, the trial court was without authority to fix an amount and we, therefore, delete such award. *(Morales v Garijak, Inc.,* 829 F2d 1355, 1361; *Havis v Petroleum Helicopters,* 664 F2d 54, 55.)

We have considered defendant Frota's other arguments on the issue of maintenance and cure and find them to be without merit. Concur—Kupferman, J. P., Asch, Wallach, Smith and Rubin, JJ.