SALVATORE MILITELLO *vs.* ANN & GRACE, INC.

Essex. May 8, 1991. - August 19, 1991.

Present: LIACOS, C.J., WILKINS, ABRAMS, O'CONNOR, & GREANEY, JJ.

*Admiralty. Vessel*, Seaman. *Interest. Damages*, Interest. *Judgment*, Interest. *Evidence*, Medical expenses.

In an action brought pursuant to the "saving to suitors" clause, 28 U.S.C. § 1333 (1988), in which the plaintiff's claims under the Jones Act, 46 U.S.C. § 688 (1988), and for unseaworthiness under general maritime law were both tried before a jury, the questions whether to award prejudgment interest, and at what rate, were to be decided by the jury in accordance with the practice established by the United States Court of Appeals for the First Circuit; consequently, where the plaintiff did not correctly pursue prejudgment interest, he was not entitled to recover it. [24-28]

In an action brought pursuant to the "saving to suitors" clause, 28 U.S.C. § 1333 (1988), this court adopted the Federal rule set forth in 28 U.S.C. § 1961 (1988), that postjudgment interest on the verdict be calculated from the date of the entry of the judgment at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of judgment (at the rate of 7.9 per cent per annum in this case). [28-29]

In an action for admiralty claims brought pursuant to the "saving to suitors" clause, 28 U.S.C. § 1333 (1988), the judge did not abuse his discretion in excluding evidence that some of the plaintiff's medical expenses may have been paid by medical insurance provided by the defendant (by which evidence the defendant sought to reduce the plaintiff's recovery for cure under general maritime law), and the defendant did not demonstrate that it had been prejudiced by the ruling. [29-30]

CIVIL ACTION commenced in the Superior Court Department on December 20, 1985.

The case was tried before *Peter F. Brady*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Thomas E. Clinton* for the defendant.

*Joseph M. Orlando* for the plaintiff.

GREANEY, J. On June 16, 1984, the Gloucester-based fishing dragger, F/V SANDRA JANE, was about 110 miles at sea at the Georges Bank fishing grounds when a fire broke out on board. The plaintiff, Salvatore Militello, the fishing captain and a crewman of the vessel, reached a small dory as he abandoned ship. There were no oars in the dory, allegedly because the shore captain of the F/V SANDRA JANE had forgotten to secure the oars following the vessel's last trip. As a result, the plaintiff was left to paddle the dory with his hands. The plaintiff suffered a heart attack and was subsequently disabled.

On December 20, 1985, the plaintiff brought suit in the Superior Court against the defendant, Ann & Grace, Inc., the vessel's owner. The plaintiff's action was brought pursuant to the saving to suitors clause of 28 U.S.C. § 1333 (1988),[1] and sought damages for (1) violation of the Jones Act, 46 U.S.C. § 688 (1988); (2) unseaworthiness under general maritime law; and (3) cure under general maritime law. The case was tried to a jury who, in answer to special questions, found that the defendant had violated the Jones Act, that the F/V SANDRA JANE was unseaworthy, and that the defendant was solely responsible for the plaintiff's injuries. The jury awarded the plaintiff total damages of $175,000 on the Jones Act and unseaworthiness claims and

---

[1]This statute provides in part as follows: "The district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." The "saving to suitors" clause allows plaintiffs to bring maritime claims at law rather than in admiralty before either a Federal District Court (if the plaintiff meets the requirements for Federal diversity jurisdiction) or a State court. Under this clause, the State courts have concurrent jurisdiction to decide in personam admiralty claims like those made by the plaintiff. See *Madruga* v. *Superior Court*, 346 U.S. 556, 561 (1954); *Keough* v. *Cefalo*, 330 Mass. 57, 60 (1953).

$20,000 for cure (medical) expenses. The clerk of the Superior Court added prejudgment interest to these damages pursuant to G. L. c. 231, § 6B (1990 ed.), and entered judgment.

The defendant subsequently filed two motions pursuant to Mass. R. Civ. P. 59 (e), 365 Mass. 827 (1974), to alter or amend the judgment in the following respects: (a) to strike the assessment of prejudgment interest pursuant to G. L. c. 231, § 6B, and (b) to deduct from the $20,000 award for cure the amount of payments of the plaintiff's medical bills made under an insurance policy. Both motions were denied, and the defendant seasonably appealed from their denial and from the judgment. We granted the plaintiff's application for direct appellate review.

The defendant argues that (1) the matter of prejudgment interest should have been submitted to the jury pursuant to the requirements of Federal maritime law and should not have been assessed under G. L. c. 231, § 6B; (2) postjudgment interest should be allowed according to Federal law and not pursuant to G. L. c. 235, § 8 (1990 ed.); and (3) the plaintiff's cure damages should have been reduced by payments made under the defendant's medical insurance policy.

1. *Prejudgment interest.* At the conclusion of the evidence at trial, the defendant requested of the judge that the special questions to be asked of the jury include questions as to whether prejudgment interest should be awarded on any damages found by them and if so at what rate.[2] The defendant's counsel argued to the judge that, under the substantive Federal maritime law, the issue of prejudgment interest presents a question to be decided by the trier of fact as matter of discretion. The plaintiff opposed the asking of the questions, arguing that interest should be awarded automatically under G. L. c. 231, § 6B, on any jury verdict for dam-

---

[2]The requested special questions read as follows:

"6.  (a) Do you award prejudgment interest to Mr. Militello?
    Yes _____          No _____
    (b) If so, at what rate? _____%"

ages. The judge refused to ask the questions requested by the defendant, and subsequently denied the defendant's motion, pursuant to Mass. R. Civ. P. 59 (e), to strike from the judgment the amount of prejudgment interest included by the clerk under G. L. c. 231, § 6B.

The defendant now argues that the rule of maritime law, under which an award of prejudgment interest rests with the discretion of the trier of fact, should be applied to this case because the plaintiff's action concerned the enforcement of rights created by the maritime law. The plaintiff agrees that he would not be entitled to prejudgment interest on his recovery under the Jones Act because neither that statute nor the Federal Employer's Liability Act, 45 U.S.C. § 51 (1988), on which the Jones Act is based, allows prejudgment interest. The plaintiff argues, however, that interest may be allowed because the jury also found for the plaintiff on his unseaworthiness claim, and because that claim was decided under Massachusetts common law tort principles, the application of G. L. c. 231, § 6B, was appropriate and not in conflict with Federal law. We acknowledge that under the law followed in the United States Court of Appeals for the First Circuit, interest may be awarded when a Jones Act case is combined with a separate maritime cause of action such as an unseaworthiness claim. See *Robinson* v. *Pocahontas, Inc.,* 477 F.2d 1048 (1st Cir. 1973). We agree with the defendant, however, that the question of prejudgment interest should have been submitted to the jury.

Despite the plaintiff's argument that his are State tort claims, his complaint stated (and the trial decided) claims brought under the Jones Act and under the general maritime law for unseaworthiness. These claims are traditional Federal admiralty claims, notwithstanding the fact that they were brought at law in a State court under the saving to suitors clause.[3] See *Moore-McCormack Lines, Inc.* v. *Amirault,* 202

---

[3]We have said that unseaworthiness is a condition present when a shipowner violates "an absolute duty to furnish a seaworthy vessel." *Caddy* v. *Texaco, Inc.,* 363 Mass. 36, 40 (1973). "This duty 'is essentially a species of liability without fault, analogous to other well known instances in our

F.2d 893, 896 (1st Cir. 1953). "It is well settled that by force of the Constitution itself, when a common law action is brought, whether in a state or in a federal court, to enforce a cause of action cognizable in admiralty, the substantive law to be applied is the same as would be applied in an admiralty court — that is, the general maritime law, as developed and declared, in the last analysis, by the Supreme Court of the United States, or as modified from time to time by Act of Congress." *Id.* at 896-897. See *Southern Pac. Co.* v. *Jensen,* 244 U.S. 205, 216 (1917); *Caddy* v. *Texaco, Inc.,* 363 Mass. 36, 37 (1973); *Thorneal* v. *Cape Pond Ice Co.,* 321 Mass. 528, 532 (1947). Federal and State courts agree that because it concerns a substantive remedy,[4] the questions whether to, and who may, award prejudgment interest are governed by the Federal maritime law and not State law. See, e.g., *Moore-McCormack Lines, Inc.* v. *Amirault, supra* at 898-899 & n.1 (G. L. c. 231, § 6B, does not apply to seaman's personal injury damages in diversity case); *Wyatt* v. *Penrod Drilling Co.,* 735 F.2d 951, 955 (5th Cir. 1984); *Newburgh Land & Dock Co.* v. *Texas Co.,* 227 F.2d 732 (2d Cir. 1955); *Morris* v. *Transworld Drilling Co.,* 365 So. 2d 46, 47 (La. Ct. App. 1978); *Shemman* v. *American S.S. Co.,* 89 Mich. App. 656, 677 (1979); *Pires* v. *Frota Oceanica Brasileira,* 161 A.D.2d 129, 132 (N.Y. 1990). See also Annot., 80 A.L.R. Fed. 185 (1986).

In addition, as we recently discussed in *Morris* v. *Massachusetts Maritime Academy,* 409 Mass. 179, 181 (1991), the United States Supreme Court has ruled that the extent to

law.' " *Id.,* quoting *Seas Shipping Co.* v. *Sieracki,* 328 U.S. 85, 94 (1946). The fact that we have drawn analogies between the concepts of unseaworthiness and strict liability torts, however, does not negate the fact that unseaworthiness is a maritime claim arising under the general Federal maritime law.

[4]Since "damages" include "both the original debt or damage and whatever interest ought to be added to make a just verdict," *Turcotte* v. *DeWitt,* 333 Mass. 389, 392 (1955), an award of prejudgment interest is a substantive remedy. See *Jackson* v. *Anthony,* 282 Mass. 540, 546 (1933); *Burke* v. *Lappin,* 1 Mass. App. Ct. 426, 433 (1973). Cf. *Morris* v. *Watsco, Inc.,* 385 Mass. 672, 675 (1982).

which State courts may apply State law to maritime claims is limited by "a so-called 'reverse-*Erie*' doctrine which requires that the substantive remedies afforded by the States conform to governing federal maritime standards." *Offshore Logistics, Inc.* v. *Tallentire*, 477 U.S. 207, 223 (1986). "State law may not be applied in maritime cases if 'it contravenes the essential purpose expressed by an act of Congress or works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of that law in its international and interstate relations.' " *Morris* v. *Massachusetts Maritime Academy, supra*, quoting *Southern Pac. Co.* v. *Jensen, supra* at 216.

The Federal rule is clear for maritime claims tried in United States District Courts within the jurisdiction of the United States Court of Appeals for the First Circuit, that in an action such as this in which both Jones Act and unseaworthiness claims are tried before a jury, the questions whether to award prejudgment interest, and at what rate, are to be decided by the jury. *Robinson* v. *Pocahontas, Inc., supra* at 1053. See *Petersen* v. *Chesapeake & O. Ry.*, 784 F.2d 732, 740 (6th Cir. 1986); *Havis* v. *Petroleum Helicopters, Inc.*, 664 F.2d 54, 55 (5th Cir. 1982); *Pires* v. *Frota Oceanica Brasileira, supra*; Schoenbaum, Admiralty and Maritime Law § 4-16 (1987). This is in contrast to the Massachusetts rule under G. L. c. 231, § 6B, which mandates that a trial court clerk add twelve per cent annual interest to all jury verdicts in personal injury cases. In the Massachusetts courts a plaintiff is assured of being awarded interest on his verdict; in the First Circuit, in actions brought to enforce rights created by the general maritime law, the jury may deny a plaintiff prejudgment interest if they conclude that the circumstances of the case so warrant.

We think an automatic award of prejudgment interest under G. L. c. 231, § 6B, on maritime tort claims like the plaintiff's heard in our State courts, would interfere with the proper harmony and uniformity of the substantive Federal maritime law and would have a meaningful impact on the

result. See *Lerner* v. *Karageorgis Lines, Inc.,* 66 N.Y.2d 479, 485 (1985). The difference between the State rule (which fixes interest at twelve per cent from the commencement of the suit) and the Federal rule (which leaves prejudgment interest entirely to the discretion of the finder of fact) is obviously significant. Maintaining disparate rules between the State and Federal courts in this jurisdiction would foster inconsistent results on a substantive matter which often constitutes a considerable portion of the damages recovered. In turn, the guarantee of prejudgment interest to a successful plaintiff in a State court would encourage forum shopping. Cf. *Butler* v. *American Trawler Co.,* 887 F.2d 20, 22 (1st Cir. 1989).

We conclude that the better rule is the one established by the United States Court of Appeals for the First Circuit for prejudgment interest. The question whether a defendant found liable for maritime torts must pay interest on the judgment from the date the claim is filed is discretionary with the finder of fact. In a jury trial, if the plaintiff wishes to recover prejudgment interest on any damages, special questions should be asked of the jury. What we have said, of course, applies only to maritime cases brought under the saving to suitors clause and does not pertain to other actions in which State courts have concurrent jurisdiction with the Federal courts to enforce Federal rights. Because the plaintiff in this case did not correctly pursue prejudgment interest, he may not now recover it. See *Robinson* v. *Pocahontas, Inc., supra* at 1053.

2. *Postjudgment interest.* General Laws c. 235, § 8, allows postjudgment interest on verdicts "at the same rate per annum as provided for prejudgment interest" on the verdict. The statute obviously has application to personal injury cases where prejudgment interest is added pursuant to G. L. c. 231, § 6B, but it does not square well with a rule which permits the denial of prejudgment interest.

Because of the need for consistency with Federal law, as has been discussed above, we think it best, in maritime cases brought in State courts under the saving to suitors clause, to

follow the Federal practice for the assessment of postjudgment interest. The Federal rule is set forth in 28 U.S.C. § 1961 (1988), and specifies that "interest shall be calculated from the date of the entry of the judgment at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment."[5] The parties have stipulated that the Federal interest rate in effect at the time of the entry of the judgment in this case was 7.9 per cent. Accordingly, postjudgment interest on the judgment in this case is to be paid at the rate of 7.9 per cent per annum.

3. *Reduction of cure damages.* The defendant argues that the judge erred in excluding evidence that some of the plaintiff's medical expenses may have been paid by a medical insurance policy provided by the defendant. The defendant sought by this evidence to reduce the amount of damages sought by the plaintiff for cure.

We have before us a partial transcript of the proceedings at trial. That transcript discloses that the issue arose at a bench conference when the defendant's counsel sought permission to question the plaintiff about the source of payment of his medical bills and to call as a witness an unidentified insurance company representative to see whether a policy provided by the defendant paid any of the plaintiff's medical expenses. The defendant's request was grounded on *Shaw* v. *Ohio River Co.*, 526 F.2d 193, 200-201 (3d Cir. 1975), which holds, as an exception to the collateral source rule, that, where the amount of cure is in issue, the vessel owner is permitted to show the plaintiff's medical bills have been paid by medical insurance policies provided by the vessel owner. See *Macedo* v. *F/V Paul & Michelle*, 868 F.2d 519, 522 (1st Cir. 1989); 2 M. Norris, The Law of Seamen § 26:74 (4th ed. 1985).

---

[5]This rate is updated periodically and may be obtained from the clerk of the United States District Court for the District of Massachusetts.

The matter was discussed at some length by the judge and both counsel. There was considerable disagreement over whether the defendant had provided medical insurance that paid any substantial portion of the plaintiff's medical expenses. From the limited portion of the transcript before us, we can ascertain that there were at least two insurance policies available to the plaintiff, one purchased by the defendant and one purchased by the plaintiff's wife when the defendant's policy expired. The plaintiff was treated by several different medical providers and the defendant apparently hoped to show that some payments of the plaintiff's medical bills might have been paid by its corporate policy. The record indicates that the defendant was unable (or unwilling) to offer proof of the amount or amounts paid, which medical providers were paid, and under which policy they were paid. The defendant could have easily clarified the issue through pretrial discovery. The judge appears to have been reluctant to allow the trial to become extended for what amounted to a fishing expedition by the defendant on the source of the payment of the plaintiff's medical expenses. The judge had discretion to rule as he did, and the defendant has not demonstrated that it has been prejudiced by the ruling. See *Holmgren* v. *LaLiberte*, 4 Mass. App. Ct. 820, 821 (1976), and cases cited. It follows that the judge also acted correctly in denying the defendant's unsupported posttrial motion under Mass. R. Civ. P. 59 (e), which sought again to raise the issue.

The judgment is vacated. A new judgment is to enter for the plaintiff awarding $195,000 in damages on which postjudgment interest is to be paid at the rate of 7.9% from October 13, 1989, to the date of the judgment's satisfaction.

*So ordered.*