KENNETH F. SHORT vs. MARINAS USA LIMITED PARTNERSHIP
& another.[1]

No. 10-P-565.

Suffolk. December 14, 2010. - March 1, 2011.

Present: MILLS, GRAINGER, & FECTEAU, JJ.

*Judgment,* Default. *Practice, Civil,* Default, Discovery, Failure to make discovery. *Federal Preemption. Admiralty. Negligence,* Fire. *Fire. Damages,* Interest, Mitigation.

In a civil action seeking damages arising from a fire that destroyed the plaintiff's boat, which was docked at the defendants' marina, the judge did not abuse his discretion in ordering entry of a default judgment against the defendants as a sanction for repeated discovery violations, where the defendants' disregard for the judge's order was knowing and intentional. [852-853]

In a civil action seeking damages arising from a fire that destroyed the plaintiff's boat, which was docked at the defendants' marina, in which the judge ordered entry of a default judgment against the defendants as a sanction for repeated discovery violations, the defendants were entitled to raise for the first time on appeal a claim that the plaintiff's claim should have been governed by Federal admiralty law rather than State law [854-855], and the judge erred in applying State law principles in calculating the original damages due to the plaintiff as well as the award of prejudgment interest [855-856].

In a civil action seeking damages arising from a fire that destroyed the plaintiff's boat, which was docked at the defendants' marina, in which the judge ordered entry of a default judgment against the defendants as a sanction for repeated discovery violations, this court vacated the judge's award of prejudgment interest, which the judge made using State law principles rather than those of Federal admiralty law, and remanded the matter for further consideration [856-857]; further, this court discerned no error in the judge's application of the collateral source rule in declining to offset the plaintiff's recovery by the amount he received from his insurer [857], but concluded that the judge erred in failing to offset the plaintiff's recovery by that portion of a settlement agreement (reached with the plaintiff's insurance broker and the broker for the owner of the boat on which the fire started) that was attributable to damages to the plaintiff's boat as a result of the other boat owner's negligence [857-859].

---

[1] Flagship Marinas Management Company, LLC, doing business as Marina Bay on Boston Harbor.

CIVIL ACTION commenced in the Superior Court Department on February 9, 2006.

Entry of a default judgment was ordered by *Peter M. Lauriat,* J., and a hearing on an assessment of damages was held before him.

*Robert E. Collins* for the defendants.

*Joseph J. Coppola* for the plaintiff.

GRAINGER, J. The plaintiff's boat was destroyed by a fire originating on a neighboring boat while both vessels were docked at the defendants' marina in Quincy. As detailed below, a judge of the Superior Court entered a default judgment against the defendants on numerous claims as a sanction for repeated discovery violations. On appeal, the defendants contend that the judge abused his discretion in issuing the default judgment. They further contend that the judge incorrectly applied State law, in lieu of Federal admiralty law, in calculating the plaintiff's damages.

*Background.* The plaintiff, Kenneth F. Short, filed the suit giving rise to this appeal on February 9, 2006, alleging that, as a direct result of the defendants' negligence, a fire originating on a nearby vessel owned by Michael Hogan was permitted to spread and destroy his boat. Short also named Hogan and Hogan's insurance broker, Old Harbor Insurance Agency (Old Harbor), as codefendants, alleging breach of contract for Old Harbor's failure to procure adequate liability insurance for Hogan — a negligent act which allegedly prevented Short, as a third-party beneficiary, from receiving compensation. Short ultimately settled his claim against Old Harbor for $25,000, and the claim against Hogan was voluntarily dismissed.

Short simultaneously filed a separate lawsuit against his own insurance broker, J. Barry Driscoll Insurance Agency (Driscoll), alleging a breach of contract — similar to that of Old Harbor — for failure to procure adequate insurance on his own boat. He sought damages for his expenditure of attorney's fees and other costs incurred in a coverage dispute with his insurer, OneBeacon America Insurance Company (OneBeacon). The suit against Driscoll subsequently settled for $12,000. After succeeding in the coverage litigation against OneBeacon, Short

received an additional $75,000. OneBeacon retained its right to subrogate the claim.

Failing to reach a settlement with the remaining defendants, the plaintiff initiated discovery on May 10, 2007, serving them with notices of deposition and document requests pursuant to Mass.R.Civ.P. 30(b)(6), 365 Mass. 780 (1974).[2] The defendants responded with general objections, including an objection to the production of any privileged material, but did not object to any of the specific requests. Four months later, after several attempts to compel production from the defendants, the plaintiff filed his first request for sanctions pursuant to Mass.R.Civ.P. 37, as amended, 423 Mass. 1406 (1996). The motion judge granted the plaintiff's motion in part on October 26, 2007, but declined to enter a default judgment against the defendants. Rather, the judge ordered the defendants to "produce all requested documents . . . without objection" by November 16, 2007. In what appears to have become a reflexive practice on the part of the defendants, they continued to provide incomplete responses to discovery requests. Witnesses produced to testify on the defendants' behalf were unprepared and unable to confirm the extent to which the defendants had attempted to comply with document requests.

Short filed his second motion for rule 37 sanctions on February 19, 2008, requesting that a default judgment enter against the defendants in view of their continued failure to produce requested documents. Citing "the absence of any evidence that the defendants have knowingly failed to produce any requested documents," the judge denied the motion.[3] The judge noted,

---

[2]Of particular relevance to this appeal were requests numbered 24 and 27, which read as follows:

"24. Any and all documents relating to investigations conducted by or on behalf of Defendant-Marinas, Defendant-Flagship *or their insurers* relating to the Fire on February 17, 2003, including drawings, sketches, photographs, witness statements, notes, memos, drafts and reports" (emphasis supplied).

"27. Any and all documents relating to claims, demands, lawsuits, actions, charges or cases by or against Defendant-Marinas, Defendant-Flagship *or their insurers* relating to the Fire on February 17, 2003" (emphasis supplied).

[3]In declining the plaintiff's request for a default judgment, the judge noted

however, that were Short to subpoena the files of the defendants' insurance agents or insurers, and discover "relevant, responsive documents that have not heretofore been produced, sanctions against the defendants and/or their counsel would certainly be in order."

On June 27, 2008, Short served the defendants with a second rule 30(b)(6) notice of deposition and request for production. Utilizing language identical to the first request, Short once again requested "[a]ny and all documents relating to claims, demands, lawsuits, actions, charges or cases by or against Defendant-Marinas, Defendant-Flagship or their insurers relating to the Fire on February 17, 2003." A subsequent deposition of the defendants' insurer, Chubb Insurance Company (Chubb), revealed several documents within its possession that had not previously been produced. Chubb also produced a privilege log outlining more than one hundred additional documents withheld on the grounds of either attorney-client privilege or work product. These documents had not previously been identified by the defendants as withheld for reasons of privilege and were withheld both before and after the judge's October 26, 2007, order requiring that all documents be produced "without objection."

On August 5, 2008, Short filed his third motion for sanctions, again requesting that a default judgment enter against the defendants on all claims for their repeated failure to comply with the order dated October 26, 2007. After a hearing, the judge entered a default judgment against the defendants — nearly eighteen months after the initiation of pretrial discovery. In setting forth his findings, the judge noted that "it is clear beyond peradventure that the defendants have failed to comply with the court's Order . . . and that their representations to the contrary are untrue." Concluding that the defendants' failure to comply was "knowing and intentional," the judge scheduled a hearing for the assessment of damages. Based on evidence introduced at the hearing and applying State law, the judge awarded the plaintiff $83,250 in damages, as well as prejudgment interest at the prescribed State rate.

that the defendants' "responses, on their face, appear[ed] to satisfy the court's Order" of October 26, 2007. The defendants maintained that the majority of the documents requested were not within their "care, custody or control."

*Discussion.* A. *Entry of default judgment.* Pursuant to Mass. R.Civ.P. 37(b)(2)(C), as amended, 390 Mass. 1208 (1984), a judgment of default may enter against a party who disobeys a discovery order. Our review of discovery sanctions, including defaults, is governed by the well-established abuse of discretion standard. See *Greenleaf* v. *Massachusetts Bay Transp. Authy.*, 22 Mass. App. Ct. 426, 429 (1986); *Keene* v. *Brigham & Women's Hosp., Inc.*, 56 Mass. App. Ct. 10, 16 (2002), *S.C.*, 439 Mass. 223, 235 (2003).[4] "We do not consider [a judge's] discretion abused unless its exercise has been characterized by arbitrary determination, capricious disposition, whimsical thinking, or idiosyncratic choice." *Greenleaf* v. *Massachusetts Bay Transp. Authy., supra* at 429, citing *Davis* v. *Boston Elev. Ry.*, 235 Mass. 482, 496 (1920).

When reviewing a judge's decision, "[t]he consideration[s] to be balanced . . . are, on the one hand, a concern about giving parties their day in court, and, on the other, not so blunting the [discovery] rules that they may be ignored 'with impunity.' " *Greenleaf* v. *Massachusetts Bay Transp. Authy., supra* at 429-430, quoting from *Kenney* v. *Rust*, 17 Mass. App. Ct. 699, 703 (1984). To this end, a judge may not impose the sanction of default for failure to comply with a pretrial discovery order "[u]nless the inability to comply . . . is the result of wilfulness, bad faith, or fault." *Keene* v. *Brigham & Women's Hosp., Inc., supra* at 18.

In the present case, the defendants' actions provide a proper basis for the imposition of a default judgment. Over the course of eighteen months, they extended the discovery period while simultaneously and repeatedly denying the existence of any relevant and responsive documents.[5] The judge's initial order of

---

[4]While the Supreme Judicial Court determined that *Keene* was a case involving principally spoliation rather than discovery violations, it equated the discretionary standard applied to either. See *Keene* v. *Brigham & Women's Hosp., Inc.*, 439 Mass. 223, 234-235 (2003). See also *Insurance Corp. of Ireland, Ltd.* v. *Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982); *Gos* v. *Brownstein*, 403 Mass. 252, 255-257 (1988).

[5]The defendants' assertions that the requested documents were not within their care, custody, or control are without merit. "Because the Massachusetts Rules of Civil Procedure are patterned after the Federal rules, we interpret our rules consistently with the construction given their Federal counterparts." *Strom* v. *American Honda Motor Co.*, 423 Mass. 330, 335 (1996), quoting

October 26, 2007, denied Short's request for a default judgment but also put the defendants on notice that any subsequent objections to production, including work product and attorney-client privilege, were deemed waived. The judge also denied Short's second request for a default judgment. However, he noted that future evidence of the existence of relevant documents that should have been produced by the defendants, their insurer, or their agent in response to existing subpoenas would result in his revisiting Short's request and would expose the defendants to sanctions.[6] Short's eventual depositions of Chubb employees — conducted more than fourteen months after his initial request for production — revealed that the defendants had withheld, and were continuing to withhold, relevant documents (including correspondence between insurer and insured), ostensibly relying on privileges deemed waived by the judge in light of prior discovery violations.

As the defendants contend, a lesser sanction could have been devised; however, it is not our province to substitute our judgment for that of the judge. See *Keene* v. *Brigham & Women's Hosp., Inc., supra* at 17. In light of defendants' disregard for the court's order, conduct which the judge rightly found to be "knowing and intentional," we conclude that the imposition of a default judgment was within the broad range of the judge's discretion.[7]

---

from *Solimene* v. *B. Grauel & Co., KG,* 399 Mass. 790, 800 (1987). Federal courts construe the term "control" very broadly and have "interpreted this obligation to require that, even though the party from whom information is sought might not have the legal right to obtain information, that party must nevertheless make a good faith effort to obtain it." *Strom* v. *American Honda Motor Co., supra* at 336. See *Searock* v. *Stripling,* 736 F.2d 650, 654 (11th Cir. 1984) (sanctions inappropriate so long as party made good-faith effort to obtain documents in possession of third parties).

[6]In denying Short's second motion for default, the judge emphasized the lack of any concrete evidence of noncompliance on the part of the defendants. However, he went on to note that the defendants had not contacted their insurance agent, Chubb, in response to the plaintiff's request because they alleged "it would have no documents responsive to such requests." Observing that the failure to inquire fell short of what is required pursuant to Mass.R.Civ.P. 34, as amended, 385 Mass. 1212 (1982), and Mass.R.Civ.P. 30(b)(6), 365 Mass. 780 (1974), the judge explicitly held that, were any relevant, responsive documents subsequently produced by Chubb, the defendants would be subject to further sanctions.

[7]The defendants further contend that, in crafting a sanction that is "just"

B. *Governing law.* 1. *Waiver.* We must next determine whether the defendants' remedial claims are governed by State law or Federal admiralty law. The plaintiff, citing *Clamp-All Corp.* v. *Foresta,* 53 Mass. App. Ct. 795 (2002), argues that the defendants are precluded from asserting on appeal the applicability of admiralty law, raised as an affirmative defense below, in light of the entry of a default judgment against them. We disagree.

"Where Congress has chosen to foreclose non-Federal regulation in a given area, the supremacy clause in art. 6 of the Constitution of the United States prohibits a State from applying its own law to that exclusively Federal area." *Chestnut-Adams Ltd. Partnership* v. *Bricklayers & Masons Trust Funds of Boston,* 415 Mass. 87, 90 (1993), citing *Florida Lime & Avocado Growers, Inc.* v. *Paul,* 373 U.S. 132, 142 (1963). The sphere of admiralty law rests, for the most part, within the exclusive control of the Federal government. As a practical matter this would ordinarily divest State courts of jurisdiction: "[I]n areas under exclusive Federal control, the supremacy clause effectively removes a State court's subject matter jurisdiction." *Chestnut-Adams Ltd. Partnership* v. *Bricklayers & Masons Trust Funds of Boston, supra* at 90.[8] It is well established that questions of subject-matter jurisdiction may be raised at any time, and are not waived even when not argued below. See *Patry* v. *Liberty Mobilhome Sales, Inc.,* 15 Mass. App. Ct. 701, 704 (1983) ("Jurisdictional questions, of course, remain open at any stage of the proceedings, even though not raised below"). Cf. *South Buffalo Ry. Co.* v. *Ahern,* 344 U.S. 367, 374 (1953) (Douglas, J., dissenting), citing *United States* v. *Corrick,* 298 U.S. 435, 440 (1936)

within the meaning of Mass.R.Civ.P. 37(b)(2), as amended, 390 Mass. 1208 (1984), the judge was required to consider the numerous factors enunciated in *Keene* v. *Brigham & Women's Hosp., Inc., supra* at 21 (courts must consider "the degree of culpability of the nonproducing party; the degree of actual prejudice to the other party; whether less drastic sanctions could be imposed; the public policy favoring disposition of the case on the merits; and the deterrent effect of the sanction"). However, as we noted in *Munshani* v. *Signal Lake Venture Fund II, L.P.,* 60 Mass. App. Ct. 714, 722 (2004), the *Keene* factors "applied to sanctions for nonwilful failure to comply with discovery orders" and thus are not relevant to sanctions imposed for wilful conduct or bad faith. *Keene* v. *Brigham & Women's Hosp., Inc., supra.*

[8]The limited exception created by the "saving to suitors" clause, discussed *infra,* vested concurrent jurisdiction in Superior Court in this case.

("No waiver, consent, or estoppel should be allowed to enlarge the state domain at the expense of the overriding federal policy"). Accordingly, the defendants' preemption claim may be raised for the first time on appeal.

2. *Admiralty law.* The United States Supreme Court has prescribed a two-part test to determine whether a cause of action falls within Federal admiralty jurisdiction. For admiralty jurisdiction to apply, (1) a wrong must occur on navigable waters, and (2) the activities giving rise to that wrong must bear a sufficient nexus to traditional maritime activity. See *Foremost Ins. Co.* v. *Richardson,* 457 U.S. 668, 672-674 (1982). In *Sisson* v. *Ruby,* 497 U.S. 358, 367 (1990), a case bearing facts substantially similar to those in the present case, the Supreme Court — applying the test enunciated in *Foremost Ins. Co.* — held that "the storage and maintenance of a vessel at a marina on navigable waters is substantially related to 'traditional maritime activity.' " As such, claims arising from fires occurring on such vessels in navigable waters, as was the case here, are cognizable in admiralty. See *id.* at 362-363.

Though Federal District Courts generally and traditionally have original and exclusive jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction," see 28 U.S.C. § 1333(1) (2006), such claims can be set forth at law in State court pursuant to the "saving to suitors" clause. See *Militello* v. *Ann & Grace, Inc.,* 411 Mass. 22, 23 n.1 (1991). "Under this clause, the State courts have concurrent jurisdiction to decide in personam admiralty claims like those made by the plaintiff." *Ibid.* Moreover, when a cause of action cognizable in admiralty is brought in State court, "[i]t is well settled that by force of the Constitution itself . . . the substantive law to be applied is the same as would be applied in an admiralty court — that is, the general maritime law." *Id.* at 26, quoting from *Moore-McCormack Lines, Inc.* v. *Amirault,* 202 F.2d 893, 896-897 (1st Cir. 1953).

Here, the judge applied State law principles in calculating the original damages due to the plaintiff as well as the award of prejudgment interest. These are questions "governed by the Federal maritime law and not State law," *Militello* v. *Ann & Grace, Inc., supra* at 26, and cases cited, and thus, to the extent

that the law applied does not "conform to governing federal maritime standards," the judgment cannot stand. *Id.* at 27, quoting from *Offshore Logistics, Inc.* v. *Tallentire,* 477 U.S. 207, 223 (1986). "State law may not be applied in maritime cases if 'it contravenes the essential purpose expressed by an act of Congress or works material prejudice to the characteristic features of the general maritime law.' " *Militello* v. *Ann & Grace, Inc.,* *supra,* quoting from *Morris* v. *Massachusetts Maritime Academy,* 409 Mass. 179, 181 (1991).

Bearing these principles in mind, we now turn to the individual claims raised on appeal.

C. *Damages.* On appeal the defendants assert (1) improper assessment of prejudgment interest, (2) inapplicability of the so-called "collateral source" rule to the plaintiff's arbitration award from his insurer, OneBeacon, and (3) failure to apply a dollar-for-dollar offset to Short's recovery in settlements with his insurance broker, Driscoll, and Hogan's insurance broker, Old Harbor.

1. *Prejudgment interest.* Under Massachusetts law, G. L. c. 231, § 6B, the judge is required to add prejudgment interest to the plaintiff's award of damages at the prescribed rate.[9] As discussed, *supra,* "the questions whether to, and who may, award prejudgment interest are governed by the Federal maritime law and not State law." *Militello* v. *Ann & Grace, Inc.,* *supra* at 26. The Federal rule for admiralty claims leaves the question whether prejudgment interest should be applied to maritime torts to the discretion of the finder of fact. *Id.* at 28. We conclude that application of G. L. c. 231, § 6B, in the present case "would interfere with the proper harmony and uniformity of the substantive Federal maritime law and would have a meaningful impact on the result." *Id.* at 27-28. The judge considered himself required to impose interest under State law while, in fact, it was a matter

---

[9]General Laws c. 231, § 6B, as amended through St. 1982, c. 183, § 2, reads in relevant part: "In any action in which a verdict is rendered or a finding made or an order for judgment made for pecuniary damages for personal injuries to the plaintiff or for consequential damages, or for damage to property, there shall be added by the clerk of court to the amount of damages interest thereon at the rate of twelve per cent per annum from the date of commencement of the action even though such interest brings the amount of the verdict or finding beyond the maximum liability imposed by law."

for his exercise of discretion as a fact finder under Federal admiralty law. The imposition of prejudgment interest is vacated so that the judge may consider the issue on remand.

2. *Collateral source rule.* The judge declined to offset the plaintiff's recovery by $75,000, the amount the plaintiff received from his insurer, OneBeacon. As a matter of Massachusetts law, "a tortfeasor's liability to an injured person shall not be reduced by the amount of compensation received by the injured person pursuant to an insurance policy." *Palochko* v. *Reis*, 67 Mass. App. Ct. 103, 108 (2006), quoting from *Buckley Nursing Home* v. *Massachusetts Commn. Against Discrimination*, 20 Mass. App. Ct. 172, 183 (1985). The law of the United States Court of Appeals for the First Circuit does not differ in this respect, as "in admiralty, as well as at law, there is no more solidly established principle than that payments or reparations of whatever nature which the injured party receives from a collateral source are, in the words of the courts, res inter alios acta, of no concern to the wrongdoer." *Rugo Constr. Co.* v. *New England Foundation Co.*, 172 F.2d 964, 969 (1st Cir. 1949), quoting from *Agwilines, Inc.* v. *Eagle Oil & Shipping Co.*, 153 F.2d 869, 873 (2d Cir. 1946) (Clark, J., dissenting on other grounds).[10] Thus, "one whose ship has been lost or damaged by the fault of another," as is the case here, "may nevertheless recover his damages from the wrongdoer even though in fact he has received compensation for his loss from his insurer." *Rugo Constr. Co.* v. *New England Foundation Co.*, *supra*, and cases cited. Accordingly, we discern no error in the judge's application of the collateral source rule.[11]

3. *Settlements with Driscoll and Old Harbor.* The judge declined to provide the defendants with an offset to Short's

---

[10]See *Fitzgerald, P.P.A.,* v. *Expressway Sewerage Constr., Inc.*, 177 F.3d 71, 73 (1st Cir. 1999), citing *Jones* v. *Wayland*, 374 Mass. 249, 262 (1978). (collateral source rule provides that "compensation received from a third party unrelated to a tortfeasor-defendant . . . will not diminish an injured party's recovery from that tortfeasor").

[11]We note that the plaintiff's insurer retains its subrogation rights to the proceeds recovered by the plaintiff in the current cause of action. See *Frost* v. *Porter Leasing Corp.*, 386 Mass. 425, 427 (1982), and cases cited ("If the insured recovers from the tortfeasor, the insurer's right becomes a right to the proceeds in the hands of the insured"). However, contrary to the defendants' contentions, this right does not preclude the plaintiff's recovery of damages from the defendants for the loss of his vessel.

damages in the amounts he recovered from his own broker, Driscoll, and Hogan's broker, Old Harbor. Short sued Driscoll for failing to provide him with insurance adequate to his needs, a failure which necessitated litigation with OneBeacon. The settlement with Driscoll was to compensate Short for the expense incurred to establish coverage and obtain insurance proceeds; this is clearly a separate cause of action and seeks damages separate from those caused by the fire. The judge was correct in declining the request for an offset.

Short's settlement with Old Harbor is significantly closer in kind to damages resulting from the fire. The amounts obtained by Short in this settlement can be described as mixed in character. The need to pursue Hogan's carrier rather than simply present the claim and collect insurance proceeds is analogous to Short's need to pursue his own insurer. The record does not reveal to what extent, if any, expenses incurred in such a pursuit were calculated as part of the settlement. In any other respect, however, the settlement with Old Harbor was to substitute for payment from Hogan, on whose boat the fire began.

It follows that, although Old Harbor and the defendants are not joint tortfeasors in the strict sense, any amounts recovered in settlement or judgment against them "represent common damages arising from a single, indivisible harm." *Chisholm* v. *UHP Projects, Inc.*, 205 F.3d 731, 737 (4th Cir. 2000), citing *Howard* v. *General Cable Corp.*, 674 F.2d 351, 358 (5th Cir. 1982). Common damages stemming from an indivisible harm constitute the bedrock basis of the rule, long recognized in this and other jurisdictions, that a party can "have but one satisfaction for the same injury." *Murray* v. *Lovejoy*, 17 F. Cas. 1052, 1055 (D. Mass. 1863). See *Harris* v. *Union Elec. Co.*, 846 F.2d 482, 485 (8th Cir. 1988) ("an injured party is entitled to only one satisfaction for each injury"); *Krieser* v. *Hobbs*, 166 F.3d 736, 743 (5th Cir. 1999) (" 'one-satisfaction' rule exist[s] to prevent the plaintiff from recovering twice from the same assessment of liability"); Restatement (Second) of Torts § 885(3) comment f, at 335-336 (1979) ("Payments made by one who is not himself liable as a joint tortfeasor will go to diminish the claim of the injured person against others responsible for the same harm if they are made in compensation of that claim, as distinguished from payments from collateral sources").

Old Harbor's settlement represented partial compensation for the loss of the plaintiff's boat as a result of Hogan's negligence and, therefore, unlike the plaintiff's recovery from OneBeacon, was not a payment from a collateral source.[12] Here, offsetting the plaintiff's recovery by the amount of his settlement with Old Harbor would not facilitate a windfall inuring to the defendants' benefit. Rather, such an offset would prevent a windfall to the plaintiff from a noncollateral source, an outcome that is likewise disfavored by our courts. See, e.g., *Szalla* v. *Locke*, 421 Mass. 448, 453 (1995) ("Recovery of duplicative damages under multiple counts of a complaint is not permissible"). We recognize that Old Harbor bears no arguable blame for the fire itself or the damage caused by the fire, and thus cannot be termed a joint tortfeasor; this does not change the fact that, as stated, the purpose of its payment to Short was essentially compensation for the damage caused by the fire. Thus it was error to fail to offset the plaintiff's recovery by that portion of the $25,000 settlement attributable to such damages.[13]

*Conclusion.* The award of prejudgment interest is vacated. The denial of an offset for the settlement proceeds received from Old Harbor is reversed. The judgment is affirmed in all other respects, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

---

[12]Payments commonly categorized as collateral include wages, vacation, sick pay, workers' compensation benefits, and insurance policies. See *Clausen* v. *Sea-3, Inc.*, 21 F.3d 1181, 1192 (1st Cir. 1994). See also Restatement (Second) of Torts § 920A comment c. When evaluating whether a source is collateral, our determination depends upon " 'the purpose and nature of the . . . [payments],' and not merely . . . their source." *Russo* v. *Matson Nav. Co.*, 486 F.2d 1018, 1020 (9th Cir. 1973), quoting from *Gypsum Carrier, Inc.* v. *Handelsman*, 307 F.2d 525, 534 (9th Cir. 1962). Common rationales underlying the rule include "(1) to punish the tortfeasor, or (2) to ensure that the injured party receives benefits for which he or she has contracted." *Clausen* v. *Sea-3, Inc.*, *supra* at 1193 n.18 (citation omitted).

[13]Citing *McDermott, Inc.* v. *Amclyde*, 511 U.S. 202 (1994), the plaintiff argues that an offset, if any, should be based on a determination of proportionate fault rather than a dollar-for-dollar reduction. The rationale in *McDermott* was exclusive to settlements by joint tortfeasors. See *Westinghouse Credit Corp.* v. *M/V New Orleans*, 39 F.3d 553, 555 (5th Cir. 1994).