## DYLAN KEENE[1] *vs.* BRIGHAM AND WOMEN'S HOSPITAL, INC.

No. 01-P-415.

Norfolk. February 12, 2002. - September 19, 2002.

Present: PORADA, LENK, & GREEN, JJ.

Further appellate review granted, 438 Mass. 1101 (2002).

*Medical Malpractice,* Damages, Hospital, Immunity. *Charity. Hospital. Practice, Civil,* Discovery, Default. *Evidence,* Hospital record. *Due Process of Law,* Right to trial. *Damages,* Conscious pain and suffering.

In an action for medical malpractice, the judge properly imposed the sanction of default against the defendant hospital because of the defendant's inability to comply with a discovery order due to its apparent loss of hospital records pertaining to the plaintiff, and did not thereby deprive the defendant of its right to due process, where the defendant was required by statute to maintain and preserve the records and failed to fulfill its responsibility, and there was no showing that the failure to produce the records was due to circumstances beyond the defendant's control or to circumstances that were not fostered by the defendant's own record-keeping methods; where the plaintiff's case was irreparably prejudiced because the care and condition of the plaintiff during the missing record period were critical to the plaintiff's case; where no lesser sanction was appropriate; and where imposition of the sanction could well serve as notice to those with a statutory duty to preserve records to take more responsibility to see that they are preserved. [16-24]

The limited immunity provided to charitable corporations under G. L. c. 231, § 85K, is a matter that must be affirmatively pleaded and that, therefore, is subject both to being waived and to being struck as a sanction for noncompliance with a discovery order under Mass.R.Civ.P. 37(b)(2)(C); consequently, the judge in a medical malpractice action had the power to strike the statutory cap on damages that could be awarded against the defendant, a charitable corporation, as a sanction for the defendant's failure to comply with a discovery order due to its apparent loss of hospital records pertaining to the plaintiff. [24-27]

In a medical malpractice action, the judge did not err in declining to award the plaintiff compensatory damages for the loss of life experiences that he will not be able to enjoy because of his injury, where, even assuming that an award of damages for loss of enjoyment of life should be treated as a separate item of general damages under G. L. c. 231, § 60F, such an award was not appropriate where the plaintiff lacked the cognitive awareness of his loss. [27-30]

[1]Through his parents and next friends, Kathleen and Robert Keene.

CIVIL ACTION commenced in the Superior Court Department on May 12, 1995.

A pretrial motion for sanctions was heard by *Thomas E. Connolly*, J., and a hearing on assessment of damages was had before *Judith Fabricant*, J.

*Chris A. Milne* (*Marc G. Perlin* with him) for the plaintiff.

*Kenneth W. Salinger* (*Steven L. Schreckinger* with him) for the defendant.

PORADA, J. Both the plaintiff and the defendant appeal from a judgment of the Superior Court awarding the plaintiff $4,108,311.66 in damages against the defendant on his amended complaint for medical malpractice. The defendant contends that the entry of a default against it by a Superior Court judge as a sanction for its failure to produce lost hospital records under Mass.R.Civ.P. 37(b)(2)(C), as amended, 390 Mass. 1209 (1984), was not warranted by the circumstances of this case and that the judge lacked the power to strike, as an additional sanction, the statutory $20,000 cap on damages recoverable from a charitable corporation for a tort committed in the course of the performance of its charitable purposes under G. L. c. 231, § 85K. The plaintiff claims that the Superior Court judge who presided at the hearing on the assessment of damages erred in failing to award damages to him for his loss of enjoyment of life now and in the future and, thus, that the damages awarded him are inadequate. We affirm.

We summarize the pertinent factual and procedural background as a backdrop for the analysis of the issues raised. The plaintiff was born on May 15, 1986, at 1:07 A.M. at the defendant hospital. At 6:30 A.M. on that date, he was discharged from the defendant's neonatal intensive care unit to the regular nursery with a one-page discharge note that states, in pertinent part, "watch for [signs and symptoms] of sepsis . . . hold antibiotics pending CBC [complete blood count] results & cultures." The records for the next twenty hours of the plaintiff's care are missing. The records resume on May 16, 1986, at 2:30 A.M.,[2] and they indicate that the plaintiff went into septic shock and

---

[2]Throughout the record appendix, the missing record period is described as ending at either 12:00 A.M. or 2:30 A.M. on May 16, 1986. The plaintiff, in his motion for sanctions, maintains that the records are missing until 2:30 A.M.

shortly thereafter began having seizures. Subsequent testing revealed that the plaintiff had contracted neonatal sepsis and meningitis that resulted in profound brain damage. The plaintiff was discharged from the hospital on June 18, 1986.

On May 12, 1995, (almost nine years after his birth),[3] the plaintiff, through his parents, commenced this action for medical malpractice on the ground that the defendant had failed properly to diagnose or treat the plaintiff for the sepsis and meningitis, resulting in serious injury to him.[4] In its answer to

and that he does not believe that various records identified by the defendant as stemming from the time period between 12:00 A.M. and 2:30 A.M. are actually for that period. The plaintiff stresses, however, that he does not wish to involve the court in this dispute.

[3]The defendant sought to dismiss the plaintiff's claim in the trial court on the ground that his claim was barred by the statute of limitations governing claims by a minor against a health care provider under the provisions of G. L. c. 231, § 60D, as then in effect. St. 1979, c. 502. A Superior Court judge denied the motion on the ground that the statute then in effect did not bar the plaintiff's claim and, in any event, because the plaintiff was allegedly incapacitated by reason of mental illness, the statute of limitations was tolled by the provisions of G. L. c. 260, § 7. See *Boudreau* v. *Landry*, 404 Mass. 528, 530-531 (1989) (where a minor is mentally incapacitated, tolling provisions of G. L. c. 260, § 7, will prevail over the provisions of G. L. c. 231, § 60D). The defendant did not raise the issue of the statute of limitations in this appeal.

The current provisions of G. L. c. 231, § 60D, which bar all claims by a minor against a health care provider more than seven years after the occurrence of the act or omission that is the alleged cause of the injury, apply only to claims arising from acts that occurred on or after November 1, 1986, and thus would be inapplicable to the plaintiff's claims based on conduct that occurred in May, 1986.

[4]The judge who determined the damages described the plaintiff's present condition as follows. "Dylan has suffered profound brain damage. The manifestations of that damage include the following conditions, all of which are permanent. He has profound mental retardation, with his level of cognitive function at approximately that of a six month old child. He has spastic quadriplegia, such that he has little or no voluntary control of any part of his body. He turns his head in response to stimuli, but cannot lift his head. His vision is limited to some perception of light. He has scoliosis. He has chronic seizure disorder, such that he experiences regular daily seizures. He has thermoregulatory instability, so that his body is unable to maintain a constant temperature or to adjust to changes in environmental temperature. His temperature fluctuates between 86 and 106 degrees. Low temperatures cause his body systems to slow down, while high temperatures increase his seizures. He has chronic respiratory congestion. He experiences gastro-esophageal reflux, which presents a constant risk of aspiration of stomach contents and

the complaint, the defendant asserted, as affirmative defenses, charitable immunity and the cap on damages against charitable corporations set forth in G. L. c. 231, § 85K.

On October 18, 1995, the plaintiff served the defendant with a notice under Mass.R.Civ.P. 30(b)(6), 365 Mass. 782 (1974), to take its deposition on November 2, 1995. The plaintiff sought, among other information, the names, addresses, licenses held by, and board certifications of any doctor, nurse, or other person involved in the treatment and care of the plaintiff on May 14, May 15, and May 16, 1986, including the names of those doctors and nurses involved in the decision whether or not to give the plaintiff antibiotics on those dates. Although the defendant agreed to furnish other information requested in the notice to take its deposition, the defendant by letter objected to this specific request. The deposition did not go forward on November 2, 1995.

The plaintiff then served two notices to take the deposition of the defendant on January 16, 1996, seeking the identity, location, and production of the hospital records for the plaintiff and his mother for the period from May 15, 1986, at 6:35 A.M. to May 16, 1986, at 2:30 A.M., as well as all records pertaining or relating to the plaintiff for May or June of 1986; the plaintiff repeated his request for the names, addresses, licenses held by, and board certification of all doctors and nurses involved in the treatment of the plaintiff and his mother for the period from May 14 through May 16, 1986. In response to those notices, the defendant sought a protective order from a justice of the Superior Court on January 15, 1996, claiming that the requests were unduly burdensome and that the plaintiff was already in

resulting respiratory impairment. Because of his reflux and associated medical problems and risks, in October of 1995 he underwent surgical insertion of a gastrostomy tube ("G-tube"); since then, he receives nutrition by means of a prescription liquid feeding formula through the tube directly to his stomach, and does not receive any food by mouth. He is incontinent of bowel and bladder, and suffers from chronic constipation. He is unable to participate in his own care in any way. He is and always has been unable to participate in any of the activities that non-disabled children ordinarily do, and he will be unable to participate in any form of work or adult leisure activity. . . . Dylan is unable to communicate through the use of language in any form. He manifests his reactions to sensations and stimuli through facial expressions and vocalizations, including smiling, grimacing, crying and laughing."

possession of all records available to the defendant. A justice of the Superior Court denied the motion for a protective order on February 23, 1996.

The plaintiff then served anew two notices to take the deposition of the defendant on March 12, 1996, and sought the same information and records requested in the prior deposition notices. At the scheduled deposition, the defendant produced two witnesses from the defendant's medical records department who testified that they could find no records for the period in question, did not know the names of the doctors or nurses who treated the plaintiff for the relevant time period, and had made no attempt to ascertain the names of the doctors or nurses. The deposition was continued until March 25, 1996, at which time the same two witnesses acknowledged that they had made no further effort to identify the doctors or nurses who treated the plaintiff.

On April 12, 1996, the plaintiff filed a motion for sanctions, requesting that the defendant be precluded from offering any testimony from any doctor or nurse involved in the treatment or care of the plaintiff for the period of time from May 15, 1986, at 6:35 A.M. through May 16, 1986, at 12:00 A.M., because of the failure of the defendant to identify the doctors or nurses involved in the treatment of the plaintiff during this time period. The defendant opposed the motion in writing, noting that the defendant had not violated any court order to produce this information. The defendant also disclosed the steps it had taken to locate the records and information: specifically checking the medical records of the eighty-three babies born at the hospital during the relevant time period of May 14 through May 16, 1986. A judge of the Superior Court scheduled a hearing on the plaintiff's motion for sanctions for May 3, 1996, and ordered the defendant's chief medical record librarian as well as any other medical record librarians involved in attempting to locate the plaintiff's medical records to attend. The plaintiff then filed a supplemental request for sanctions asking that the defendant be defaulted and that the affirmative defense of charitable im-

munity be struck.[5] Although no order for production of the missing records was subsequently entered on the docket, at the hearing the judge stated that the defendant was to make an effort to determine the names and addresses of the doctors who cared for the plaintiff during the time period of the missing records and to ascertain from them if they had copies of the hospital records or other pertinent information in their files; moreover, the judge stated that the defendant was also to make inquiry of Harvard Risk Management[6] when the first report of the incident occurred.

On or about June 6, 1997, the plaintiff renewed his motion for a default judgment on the ground that the defendant had failed to produce the missing records or to supply him with the names and addresses of the doctors who cared for the plaintiff during the period covered by the lost records. After a hearing on July 29, 1997, at which the defendant detailed what it had done to comply with the plaintiff's request for production of the records or an equivalent substitute, the judge ordered, on September 30, 1997, that the defendant be defaulted and that its charitable immunity defense be struck on the grounds that the missing records and information were critical to the plaintiff's proof of his claim, and without those records, the plaintiff's claim would be irreparably prejudiced; no lesser sanction was appropriate; the defendant must bear the responsibility for the loss of the records because it was required by law to preserve the same and it had failed in its statutory duty; and the imposition of those penalties would deter future litigants from similar abuses. The judge also found that it was appropriate to strike the statutory damage cap because the defendant's failure to produce those records or to identify the doctors or nurses responsible for the care of the plaintiff during the period of the missing records had deprived the plaintiff of the opportunity to recover damages from those individuals directly at fault.

---

[5]The plaintiff also filed a motion to amend his complaint to assert that the defendant was negligent in failing to administer antibiotics to the plaintiff approximately five hours after his birth, thereby causing the plaintiff to suffer severe injuries. The motion was allowed. The defendant, in its answer to the amended complaint, reasserted its affirmative defenses of charitable immunity and the statutory limitation of damages on a charitable corporation under G. L. c. 231, § 85K.

[6]See note 11, infra.

Subsequent to the entry of default, the plaintiff moved for a hearing on the assessment of damages. At that hearing the plaintiff sought to recover, as a separate element of damages, an amount for the loss of the enjoyment of life that he would have experienced but for his injury. The defendant objected on the grounds that those losses could only be recovered as a component of pain and suffering to the extent that they actually give rise to such suffering by virtue of the plaintiff's conscious awareness of them, and that, because the plaintiff's cognitive capacity makes him unable to have any such awareness, he was not entitled to compensation for them. The judge adopted the defendant's position and ruled that the plaintiff's general damages must be limited to compensation for physical and mental pain and suffering that the plaintiff has actually experienced and will experience in the future; otherwise, such an award would serve only to punish the defendant. The judge awarded the plaintiff the total sum of $4,108,311.66 in damages for past medical expenses, future costs of care, lost earning capacity, and general damages together with interest from the date of the filing of the action.

We now turn to the issues raised in this appeal.

1. *Discovery sanctions.*

(a) *Default sanction.* In imposing the sanction of default, the judge acted under Mass.R.Civ.P. 37(b)(2)(C), which permits entry of default against a party who disobeys a discovery order.[7] At issue is whether the judge abused his discretion in imposing the severe sanction of default because of the defendant's inability to comply with the discovery order due to its apparent loss of the hospital records.[8] The defendant's argument that the judge abused his discretion in doing so is threefold: (1) default

---

[7]Neither party nor the judge, in ruling on the plaintiff's request for sanctions under rule 37, raised the issue of spoliation of physical evidence. Under our case law, a party will be precluded from using any evidence obtained from the negligent or intentional destruction or loss of physical evidence that the party knew or reasonably should have known would be needed for litigation. *Kippenhan* v. *Chaulk Servs., Inc.,* 428 Mass. 124, 127-128 (1998). Here, the judge made no determination concerning when the records were lost or when the defendant should have known that litigation was a possibility.

[8]In this appeal the parties do not dispute that the judge had issued an order for the production of the plaintiff's complete medical records, including those for the missing period, or an equivalent substitute such as the names of the

was inappropriate because the defendant did not have the records in its possession, custody, or control at the time the request for production was made; (2) imposition of a default in these circumstances deprived the defendant of its right to due process; and (3) imposition of a default sanction was not warranted where the plaintiff would have been able to establish proof of his claim without the missing records. In assessing these issues, we are mindful that "[t]he question, of course, is not whether this [c]ourt . . . would as an original matter have [applied the sanction]; it is whether the [lower c]ourt abused its discretion in so doing." *Insurance Corp. of Ireland* v. *Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982), quoting from *National Hockey League* v. *Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642 (1976).

The defendant's first argument, that the imposition of the default sanction was inappropriate because the defendant did not have the records in its possession, custody, or control at the time the request for production was made, is without merit. The motion judge made no determination regarding when the records were lost, nor was one required, because this argument was not raised before him. In any event, this argument fails because there has been no showing that the records, which originated with the defendant and were required by law to be maintained and preserved by the defendant, were lost due to circumstances beyond the defendant's control as discussed herein. Compare *Dunn* v. *Trans World Airlines, Inc.*, 589 F.2d 408, 415 (9th Cir. 1978) (no abuse of discretion in not sanctioning plaintiff for failure to produce medical records that were no longer in existence due to their destruction by a third party).

The defendant's second argument, that the imposition of the default sanction deprived it of its right to due process, is of consequence.[9] The due process clause imposes limits upon a court's discretion to impose a sanction that deprives a party of the opportunity for a trial on the merits. *Societe Internationale*

doctors and nurses who treated the plaintiff during the period for which the medical records are missing.

[9]The defendant's third argument, that the plaintiff's proof was not irreparably damaged by the loss of the records, is addressed in our discussion of the due process issue.

*Pour Participations Industrielles et Commerciales, S.A.* v. *Rogers*, 357 U.S. 197, 209 (1958). *Gos* v. *Brownstein*, 403 Mass. 252, 255 (1988). "[T]here are constitutional limitations upon the power of courts, even in aid of their own valid processes, to dismiss an action without affording a party the opportunity for a hearing on the merits of his cause. The authors of [Fed.R.Civ.P.] 37 were well aware of these constitutional considerations. See Notes of Advisory Committee on Rules, Rule 37, 28 U.S.C. (1952 ed.) p. 4325." *Societe Internationale Pour Participations Industrielles et Commerciales, S.A.* v. *Rogers, supra* at 209. Unless the inability to comply with a discovery order is the result of wilfulness, bad faith, or fault, a judge may not impose the sanction of default for failure to comply with a pretrial discovery order under Mass.R.Civ.P. 37(b)(2)(C). *Gos* v. *Brownstein*, 403 Mass. at 255-257. Here, the judge did not find that the defendant's inability to comply was due to wilfulness or an act of bad faith, but rather found that it was due to its negligence in failing to preserve records that it was required by law to preserve. As such, the judge determined that the defendant's conduct constituted the requisite fault to justify imposition of the default sanction.

There are no Massachusetts appellate decisions that have defined "fault" as applied in this context. See *Roxse Homes Ltd. Partnership* v. *Roxse Homes, Inc.*, 399 Mass. 401, 406 (1987); *Gos* v. *Brownstein*, 403 Mass. at 255-257 & n.5. There also is no Massachusetts appellate decision that has upheld the sanction of default for noncompliance with a pretrial production order based on a litigant's inability to comply due to negligence. But see *Greenleaf* v. *Massachusetts Bay Transp. Authy.*, 22 Mass. App. Ct. 426, 430 (1986) (default judgment upheld where the defendant's noncompliance with a pretrial order for production was based on its consistent and persistent bumbling and slipshod treatment of rule 37). In light of the lack of controlling Massachusetts authority, and because Mass.R.Civ.P. 37(b) is patterned after Fed.R.Civ.P. 37(b), we turn to Federal decisions for guidance. *Strom* v. *American Honda Motor Co.*, 423 Mass. 330, 335 (1996) (" 'Because the Massachusetts Rules of Civil Procedure are patterned after the Federal rules, we interpret our rules consistently with the construction given their Federal

counterparts,' *Solimene* v. *B. Grauel & Co., KG*, 399 Mass. 790, 800 [1987], 'absent compelling reasons to the contrary or significant differences in content,' *Rollins Envtl. Servs., Inc.* v. *Superior Court*, 368 Mass. 174, 180 [1975]").

We look first to the decision in *Societe Internationale Pour Participations Industrielles et Commerciales, S.A.* v. *Rogers, supra*, in which the United States Supreme Court held that a sanction of dismissal based upon the inability to comply with a pretrial production order would not be warranted when the inability to comply was fostered neither by the litigant's own conduct nor by circumstances within its control. *Id.* at 211-212. Because here the defendant was responsible for keeping and preserving the records, which were in its custody, and because no attenuating circumstances have been shown for their inexplicable loss, it appears that the defendant's conduct satisfies the requirement of fault and therefore supports the judge's choice of default as a sanction.

With respect to the culpability of the defendant, the judge reasoned that the defendant's conduct fit the criterion of "fault" set forth in *Societe Internationale Pour Participations Industrielles et Commerciales, S.A.* v. *Rogers, supra*, because the defendant was required by statute to maintain and preserve the records and failed to fulfill its responsibility. G. L. c. 111, § 70.[10] Although some Federal Circuit Courts of Appeal require a finding of wilfulness or bad faith as a predicate for the imposition of the severe sanction of default or dismissal for noncompliance with a discovery order, see, e.g., *Poulis* v. *State Farm Fire & Cas. Co.*, 747 F.2d 863, 868-869 (3d Cir. 1984); *Velazquez-Rivera* v. *Sea-Land Serv., Inc.*, 920 F.2d 1072, 1076-1077 (1st Cir. 1990), the judge relied upon two Federal decisions holding that fault, as the

---

[10]General Laws c. 111, § 70, as appearing in St. 1981, c. 495, § 1, provides in pertinent part: "Hospitals or clinics subject to licensure by the department of public health or supported in whole or in part by the [C]ommonwealth, shall keep records of the treatment of the cases under their care including the medical history and nurses' notes. . . . Such records shall be in the custody of the hospital or clinic. . . ."

See 105 Code Mass. Regs. § 130.370(A) (1991) which provides in pertinent part: "In accordance with [] G. L. c. 111, § 70, hospitals shall maintain records of the diagnosis and treatment of patients under their care for thirty years after the discharge or the final treatment of the patient to whom it relates."

term is used in the *Societe* case, has a meaning that is not subsumed by "wilfulness" or "bad faith": *Cine Forty-Second Street Theatre Corp.* v. *Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066-1068 (2d Cir. 1979), and *United Artists Corp.* v. *La Cage Aux Folles, Inc.*, 771 F.2d 1265, 1270-1271 (9th Cir. 1985). In *United Artists Corp.* v. *La Cage Aux Folles, Inc.*, *supra*, the Ninth Circuit held that the District Court judge did not abuse his discretion in dismissing a litigant's action for failure to comply with a discovery request based on the litigant's lack of diligence in keeping his attorney advised of his whereabouts so that discovery requests could be fulfilled. The court ruled that the litigant's conduct constituted the "fault" necessary to impose the sanction of dismissal. *Id.* at 1270-1271. In *Cine Forty-Second Street Theatre Corp.* v. *Allied Artists Pictures Corp.*, *supra*, the Second Circuit held that the Supreme Court's use of the term fault in the *Societe* case must have a meaning independent of "wilfulness" or "bad faith," and ruled that gross negligence resulting in failure to obey a discovery order may justify a sanction tantamount to dismissal of the claim. *Id.* at 1067-1068.

While the defendant's conduct does not mirror the conduct of the litigants in those two cases, its conduct is certainly no less blameworthy than what the Ninth Circuit found was sufficient to justify the sanction of dismissal. Further, as explicated in the *Societe* case, there has been no showing that the defendant's inability to produce the records or an equivalent substitute was due to circumstances beyond its control or circumstances that were not fostered by its own record-keeping methods.[11] We determine, therefore, that the judge was warranted in concluding that the defendant's conduct satisfied the fault criterion set forth in the *Societe* case as a necessary predicate for imposing a default sanction upon the defendant based on its inability to produce the records or an equivalent substitute.

Rule 37(b)(2) requires that the sanction imposed must be "just"; the due process clause also mandates such a standard.

---

[11]Neither the judge nor the parties make reference to a report by the hospital's risk management foundation, produced in discovery, which discloses that in 1987 the hospital was aware that a claim against it might be made on behalf of the plaintiff.

*Insurance Corp. of Ireland* v. *Compagnie des Bauxites de Guinee*, 456 U.S. at 707. In determining whether the chosen sanction of default or dismissal for failure to comply with a pretrial discovery order is just, the Federal courts have fashioned various formulae. All of the tests embrace similar factors, namely: the degree of culpability of the nonproducing party; the degree of actual prejudice to the other party; whether less drastic sanctions could be imposed; the public policy favoring disposition of the case on the merits; and the deterrent effect of the sanction. See *Poulis* v. *State Farm Fire & Cas. Co.*, 747 F.2d at 868; *Wanderer* v. *Johnston*, 910 F.2d 652, 656 (9th Cir. 1990); *Velazquez-Rivera* v. *Sea-Land Serv., Inc.*, 920 F.2d at 1076-1078; *Archibeque* v. *Atchison, Topeka & Santa Fe Ry. Co.*, 70 F.3d 1172, 1174 (10th Cir. 1995); *Bass* v. *Jostens, Inc.*, 71 F.3d 237, 241 (6th Cir. 1995). See also 8A Wright, Miller, & Marcus, Federal Practice and Procedure § 2284 (2d ed. 1994). Here, the motion judge employed such a test. He considered the conduct of the defendant, the length of time the defendant had to produce those records or an equivalent substitute, the prejudice to the plaintiff's proof of his case, the appropriateness of a less drastic sanction, the public policy favoring a trial on the merits, and the deterrent effect of the sanction.

The judge also considered the prejudice to the plaintiff and whether lesser sanctions would suffice. The judge determined that the plaintiff's case would be irreparably prejudiced because the condition and care of the plaintiff during the missing record period were critical to prove that antibiotics should have been administered sooner and that the failure to administer antibiotics earlier caused the plaintiff's injuries.

The defendant contends that the judge erred in finding that the plaintiff's claim was irreparably prejudiced. In support of this argument, the defendant points to two affidavits submitted by the plaintiff in conjunction with two different motions, one in opposition to the defendant's motion for a protective order, and the other in support of the plaintiff's motion for sanctions. The first affidavit was from a physician who averred that the defendant was negligent in failing to administer antibiotics to the plaintiff within the first five hours of his birth, which would

have been outside the missing record period[12]; the affidavit was provided to bolster the plaintiff's showing of necessity that he procure the hospital records he repeatedly sought. The second affidavit was from another physician who averred that a substantial factor in the plaintiff's injuries was the failure to administer antibiotics later in the morning on the plaintiff's day of birth, which ostensibly falls within the missing record period. This affidavit was submitted in support of the motion for sanctions in order to demonstrate the merit of the plaintiff's claim. Each affidavit was submitted by the plaintiff for a very limited purpose in conjunction with a particular motion. The defendant now claims that these affidavits are sufficient to establish that the plaintiff could have proved malpractice and causation without the missing records. Based on the record before us, we find no indication that this argument was presented to the judge until after he had imposed the sanction of default and the defendant had moved for reconsideration. We nevertheless address the merits of the argument because it relates to the judge's determination of the prejudice that would inure to the plaintiff from the loss of the records and the defendant's inability to identify the doctors or nurses who were responsible for the plaintiff's care.

The expert opinions of the two affiants would not have sufficed for proof of the plaintiff's case because their conclusions are not based on actual knowledge of the plaintiff's clinical features or of the care given to the plaintiff during the critical period of time of the missing records.[13] The expert opinions contained in the affidavits would have been subject to attack as unreliable and speculative. Moreover, the affidavits shed no light on the important issue of the identity of the doctors and nurses who cared for the plaintiff. The existence of the affidavits does not refute the judge's determination that the plaintiff's claim was irreparably prejudiced by the absence of the critical records.

---

[12]The physician's affidavit was based on the results of a blood culture, but it does not appear that the results of the blood culture were received within that five-hour period.

[13]As observed in note 12, *supra*, the affidavit of the first physician is open to question.

The defendant also relies on the decision of *Webb* v. *District of Columbia,* 146 F.3d 964 (D.C. Cir. 1998), to counter the judge's finding of irreparable prejudice. In the *Webb* decision, the Court of Appeals for the District of Columbia reversed a default judgment in favor of an employment discrimination plaintiff finding that less onerous sanctions were available where the public employer failed to preserve personnel documents as required by Federal regulations. *Id.* at 973-974. That case is distinguishable. In *Webb,* the Court of Appeals found that the lost records were not dispositive of the plaintiff's case and that a lesser sanction, such as an adverse inference that the lost files contained evidence favorable to the plaintiff, would have sufficed. *Id.* at 972-973. In *Webb,* there were witnesses whose testimony could substitute for the material in many of the destroyed records. *Id.* at 974. Here, the judge determined that the prejudice to the plaintiff was irreparable and that no lesser sanction was appropriate because of the importance of the missing records to the plaintiff's proof that the hospital was negligent in its failure to administer antibiotics to the plaintiff sooner than it did and the lack of other available evidence to prove this essential element. We do not think that the judge abused his discretion in doing so. It is uncontroverted that, at the outset of the missing record period, the plaintiff's caregivers were to watch for sepsis and, at the end of the missing record period, the sepsis was full blown. Accordingly, the care of the plaintiff and his clinical features during that period were material to the plaintiff's proof that the care given to him during that period was a breach of the duty of care owed him by the defendant, and that the plaintiff would not have suffered the severe brain damage and other injuries if antibiotics had been administered sooner. Even more important, the absence of the records precluded the plaintiff from identifying one or more defendants whose liability was not limited by any charitable cap. Without the records or the identity of his caregivers, the plaintiff's proof was irreparably thwarted.

The judge also considered that justice is better served by allowing parties their day in court. He reasoned that, by imposing a default sanction, he was depriving the hospital of its day in court, but that the loss of the records had in essence deprived

the plaintiff of his day in court. Further, the imposition of the sanction could well serve as notice to those with a statutory duty to preserve records to take more responsibility to see that they are preserved.

In sum, "[t]he most critical criterion for the imposition of a dismissal [or default] sanction is that the misconduct penalized must relate to matters in controversy in such a way as to interfere with the rightful decision of the case." *Halaco Engr. Co.* v. *Costle*, 843 F.2d 376, 381 (9th Cir. 1988). Here, the defendant's loss of records or inability to identify the doctors, nurses, or other employees who participated in the plaintiff's care during the missing record period has interfered with the rightful decision of this case. It has irreparably damaged the plaintiff's proof of his case and deprived him of the opportunity to litigate his claim against his individual caregivers to whom no statutory limitation on liability applies. Based on the judge's considered rationale for imposing the drastic sanction of default in this case, we conclude that the judge neither abused his discretion nor committed any error of law.

(b) *Striking of damage cap.* The defendant argues that the judge did not have the power to strike the statutory cap on damages that can be awarded against a charitable corporation for a tort committed in the course of performing its charitable functions. The defendant's argument is based on the premise that the limitation on damages is a matter that lies exclusively within the province of the Legislature and outside the domain of the judicial branch. We do not view the issue as one involving the separation of powers between the Legislature and the judiciary. Rather, we consider the limited immunity provided to charitable corporations under G. L. c. 231, § 85K, a matter that must be affirmatively pleaded[14] and thus is subject both to being waived and to being struck as a sanction for noncompliance with a discovery order under Mass.R.Civ.P. 37(b)(2)(C).

Prior to the passage of G. L. c. 231, § 85K, charitable immunity was recognized as an affirmative defense to tort liability. *Grueninger* v. *President & Fellows of Harvard College*, 343 Mass. 338, 339 (1961). In abrogating charitable immunity as a

---

[14]As previously stated, the defendant pleaded the statutory cap on damages as an affirmative defense.

defense to tort liability, the Legislature provided that "if the tort was committed in the course of any activity carried on to accomplish directly the charitable purposes of such corporation, . . . liability in any such cause of action shall not exceed the sum of twenty thousand dollars exclusive of interest and costs." St. 1971, c. 785, § 1. Section two of this act provided: "Nothing in [G. L. c. 231, § 85K], inserted by section one of this act, shall be construed to enlarge any protection from tort liability afforded by the common law of the commonwealth prior to the effective date of this act." St. 1971, c. 785, § 2. Since the act provides that charitable corporations are not to receive any greater protection from tort liability than they received prior to passage of the act, we are of the opinion that the partial immunity from tort liability afforded by § 85K is required to be treated in the same manner that absolute immunity was treated prior to the passage of § 85K. In other words, to be entitled to the monetary limitation, a charitable corporation must plead charitable immunity as an affirmative defense. If the charitable corporation proves the defense, then the judge shall reduce any award of damages in excess of $20,000 to that amount. As an affirmative defense, the charitable cap is subject to waiver, see *Johnson* v. *Wesson Women's Hosp.*, 367 Mass. 717, 719 (1975), and to being struck as a sanction under Mass.R.Civ.P. 37.

Our conclusion is buttressed by our interpretation of Mass.R. Civ.P. 8(c), 365 Mass. 750 (1974), which requires that a party set forth certain enumerated affirmative defenses and "any other matter constituting an avoidance or affirmative defense." Since the passage of § 85K, the Supreme Judicial Court has ruled that "[i]n order to enjoy the statutory cap, a hospital must prove both that it is a charitable organization, and that the tort complained of 'was committed in the course of any activity carried on to accomplish directly the charitable purposes of such corporation.' " *Harlow* v. *Chin*, 405 Mass. 697, 715 (1989), quoting from G. L. c. 231, § 85K. As such, those are matters that minimize the hospital's liability for damages and rise to the level of an avoidance or affirmative defense. See *ibid.* Because charitable immunity is correctly categorized as an affirmative defense, the judge had the power, under Mass.R.Civ.P. 37(b)(2)(C), to strike it. Once the defense of charitable immunity is struck, the statutory cap becomes inapplicable.

While we have viewed this issue as a challenge to the judge's order striking the defense of charitable immunity rather than as an order striking the cap, we are aware that in essence the result is the same. We nevertheless recognize that none of the prior challenges mounted against the statutory cap on damages to be awarded against charitable corporations, which the Supreme Judicial Court and the Appeals Court have both been zealous in defending, were mounted in terms of an attack on the imposition of a discovery sanction under rule 37. See *English* v. *New England Med. Center, Inc.*, 405 Mass. 423 (1989), cert. denied, 493 U.S. 1056 (1990) (challenge to the constitutionality of the $20,000 statutory cap); *Morrison* v. *Lennett*, 415 Mass. 857, 860-864 (1993) (applicability of the statutory cap to the trustees of a trust in their representative capacities and individually); *St. Clair* v. *Trustees of Boston Univ.*, 25 Mass. App. Ct. 662, 665-669 (1988) (applicability of the statutory cap to an intentional tort).

Although there appears to be no Massachusetts appellate decision that has dealt with the precise issue whether the statutory limitation on damages to be awarded against certain defendants is an affirmative defense, we are aware that several Federal courts have considered the statutory limitation placed on liability to be an affirmative defense under the cognate Fed. R.Civ.P. 8(c). See *Jakobsen* v. *Massachusetts Port Authy.*, 520 F.2d 810, 813 (1st Cir. 1975) (statutory limitation on damages to be awarded against a public or quasi public entity is an affirmative defense); *Ingraham* v. *United States*, 808 F.2d 1075, 1079 (5th Cir. 1987) (Texas's statutory limit on medical malpractice damages is an affirmative defense which must be pleaded timely or is waived); *Simon* v. *United States*, 891 F.2d 1154, 1156-1157 (5th Cir. 1990) (failure to affirmatively plead the Louisiana Medical Malpractice Act limiting damages resulted in a waiver of that defense); *Westfarm Assocs. Ltd. Partnership* v. *International Fabricare Inst.*, 846 F. Supp. 439, 440 (D. Md. 1993) (limitation on State governmental liability under the Maryland Local Government Tort Claims Act is an affirmative defense). Contrast *Taylor* v. *United States*, 821 F.2d 1428, 1433 (9th Cir. 1987), cert. denied, 485 U.S. 992 (1988) (California statute limiting recovery for noneconomic injuries in

actions based on professional negligence to $250,000 is not an affirmative defense but a limitation of liability); *Snyder* v. *Minneapolis*, 441 N.W.2d 781, 788 (Minn. 1989) (cap on municipal tort liability not an affirmative defense). We conclude that the limitation of liability flows from proof of the defense of charitable immunity and that, once that defense is struck, the limitation on liability is nonexistent. The judge had the power to strike the defense.

2. *Damages*. The plaintiff argues that the Superior Court judge who presided at the hearing on the assessment of damages erred in failing to award the plaintiff compensatory damages for the loss of life experiences that he will not be able to enjoy because of his injury. The defendant had opposed the award on the ground that Massachusetts law allows damages for such losses only as a component of mental pain and suffering to the extent they actually give rise to such suffering by virtue of the plaintiff's conscious awareness of them. The parties did not dispute the judge's finding that the plaintiff does not have sufficient cognitive function to enable him to have any conscious awareness of his own disability. In a thoughtful memorandum of decision, the judge, recognizing that there is no Massachusetts precedent on this issue, looked for guidance to the closest analogy in Massachusetts and to the law of other jurisdictions.[15] The judge noted that, under our wrongful death statute, damages are not recoverable for the loss of the

---

[15]The law of other jurisdictions is divided on this issue. Some jurisdictions award compensation for loss of enjoyment of life as a separate category of general damages on the ground that it is distinct from other compensable, noneconomic damages, in that it is designed to compensate the plaintiff for the limitations on life created by the injury and insures that a plaintiff is truly compensated for his or her injuries. *Thompson* v. *National R.R. Passenger Corp.*, 621 F.2d 814, 824 (6th Cir.), cert. denied, 449 U.S. 1035 (1980) (construing Tennessee law). See *O'Gee* v. *Dobbs Houses, Inc.* 570 F.2d 1084, 1092 n.2 (2d Cir. 1978) (Feinberg, C.J., dissenting); Comment, Loss of Enjoyment of Life as a Separate Element of Damages, 12 Pac. L.J. 965, 972-973 (1981). Other jurisdictions do not consider loss of enjoyment of life damages as a separate item of damages on the grounds that they are similar to damage awards for pain and suffering or disability and that separate damage awards will overlap, resulting in overcompensating plaintiffs for their injuries. Instead, damages for the loss of enjoyment of life are factored into the fact finder's award of damages for pain and suffering or disability. *Huff* v. *Tracy*, 57 Cal. App. 3d 939, 943-944 (1976). *Poyzer* v. *McGraw*, 360 N.W.2d 748, 753 (Iowa 1985). *Gregory* v. *Carey*, 246 Kan. 504, 513-514 (1990). *Anderson* v. *Nebraska*

decedent's life itself even though its loss necessarily includes the loss of all of the pleasures the decedent would have experienced over the course of a normal lifespan. G. L. c. 229, § 2. She also observed that, while recovery by the estate of a decedent is permitted for conscious pain and suffering, it is limited to recovery for the actual pain and conscious suffering experienced. *Carr* v. *Arthur D. Little, Inc.*, 348 Mass. 469, 475 (1965). G. L. c. 229, § 6.

The judge then turned to the two decisions in other jurisdictions which have addressed most directly the precise question before her — namely, whether, even if we assume that such damages are recoverable, the injured party must be conscious of his loss in order to recover: *McDougald* v. *Garber*, 73 N.Y.2d 246 (1989), and *Flannery* v. *United States*, 171 W. Va. 27 (1982). In *Flannery*, the West Virginia Supreme Court, basing its decision on West Virginia case law which allows recovery for loss of the ability "to function as a whole man," held that "a plaintiff in a personal injury action who has been rendered permanently semi-comatose is entitled to recover for the impairment of his capacity to enjoy life as a measure of the permanency of his injuries even though he may not be able to sense his loss of enjoyment of life." *Flannery* v. *United States*, *supra* at 30, 33. In *McDougald*, the New York Court of Appeals held that "an award of damages for loss of enjoyment of life to a person whose injuries preclude any awareness of the loss" serves no compensatory purpose but is punitive instead. *McDougald* v. *Garber*, *supra* at 254. The judge adopted the rationale of the New York decision and ruled that the plaintiff's recovery in this case is limited to compensation for the physical and mental pain and suffering that he has actually experienced and will experience in the future. We agree.

The award of damages in an action for medical malpractice is

*Dept. of Social Servs.*, 248 Neb. 651, 662-663 (1995). *McDougald* v. *Garber*, 73 N.Y.2d 246, 257 (1989). Where loss of enjoyment of life is considered a component of an award for pain and suffering or disability, some jurisdictions have ruled that such an award must be predicated on the plaintiff's cognitive awareness of his or her injuries. *Gregory* v. *Carey*, 246 Kan. at 509-515. *McDougald* v. *Garber*, 73 N.Y.2d at 254-255. Contra *Eyoma* v. *Falco*, 247 N.J. Super. 435, 452-453 (1991); *Flannery* v. *United States*, 171 W. Va. 27, 32-33 (1982).

governed by G. L. c. 231, §§ 60F and 60H. Section 60F(*b*)(3), inserted by St. 1986, c. 351, § 24, provides that, in a jury-waived trial, an award of damages shall include, but not be limited to: "[a]mounts intended to compensate the plaintiff for pain and suffering, loss of companionship, embarrassment, and other items of general damages, which have been incurred or will be incurred in the future, and whether there is a substantial or permanent impairment of a bodily function, or substantial disfigurement, or other special circumstances in the case which warrant a finding that imposition of the limitation specified in section sixty [H] would deprive the plaintiff of just compensation for the injuries sustained." Although loss of enjoyment of life is not one of the specific items of general damages included within § 60F, it is also not specifically excluded.

However, we need not decide whether an award of damages for loss of enjoyment of life should be treated as a separate item of general damages under § 60F because, even if we were to assume that it should be, we agree with the motion judge that such an award should not be made where an injured plaintiff lacks the cognitive awareness of his loss. As the motion judge noted, compensatory damages are intended to make aggrieved parties whole for the harms they have suffered or will suffer. A predicate for noneconomic damages has always been a showing that the plaintiff has actually experienced or will actually experience that item of damages in the future. Consistent with that approach is the judge's conclusion that to be entitled to this item of damage, the plaintiff must possess a cognitive awareness of his loss; otherwise, any such award is not compensatory but punitive in nature, requiring Legislative authority. *Lowell* v. *Massachusetts Bonding & Ins. Co.*, 313 Mass. 257, 269 (1943). *Caperci* v. *Huntoon*, 397 F.2d 799, 801 n.2 (1st Cir.), cert denied, 393 U.S. 940 (1968). See also G. L. c. 229, § 2. Further, to the extent that the categories of pain and suffering or permanent disability overlap with loss of enjoyment of life experiences, a duplicative damage award may result. Our firm adherence to avoiding duplicative damages favors the conclusion reached by the judge. See generally *Harrison* v. *Textron, Inc.*, 367 Mass. 540, 556 (1975); *Szalla* v. *Locke*, 421 Mass. 448, 453 (1995); *Linkage Corp.* v. *Trustees of Boston Univ.*,

425 Mass. 1, 20, cert. denied, 522 U.S. 1015 (1997). In sum, the judge did not err in denying the plaintiff's request for damages for loss of enjoyment of life as a separate item of general damages.

*Judgment affirmed.*