NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1015

JEFFREY T. SCUTERI, JR.

vs.

MARIA-PIA SHUMAN & another.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In this appeal from a Superior Court default judgment, the defendants challenge a judge's orders defaulting them, and later declining to set aside the defaults, as a discovery sanction for their failure to appear at their depositions.  They also argue that a different judge (second judge) erred by assessing damages on a claim that was time barred.  Because we see no error of law or other abuse of discretion in the default orders, and because the time-bar argument is both waived and unpersuasive, we affirm.

Background.  We recount the pertinent allegations of the complaint, which upon default are treated as true for purposes

_____

[1] Mischa Haider.

of establishing liability.  See Danca Corp. v. Raytheon Co., 28 Mass. App. Ct. 942, 943 (1990).  In March 2015, defendant Maria-Pia Shuman approached the plaintiff, Jeffrey T. Scuteri, Jr., claiming that she was from Paris, but temporarily living in New York and visiting Boston on business; she told him she found him attractive and asked to get together.  The next day, Shuman and codefendant Mischa Haider met Scuteri at a hotel bar and "barrage[d]" him with questions about his career and education, as if "interviewing" him.  That night Shuman and Scuteri had sexual intercourse.  Two months later, Shuman texted Scuteri that she was visiting Boston again and wanted to see him.  The two met at an apartment in Cambridge and again had sexual intercourse.

In June 2015, Shuman called Scuteri to say she was pregnant.  She told Scuteri that she was married to a woman, that she knew he was the father because she had never had sex with any other man, and that he would have to give up his parental rights.  Scuteri refused, and Shuman cut off further contact with him.

Scuteri hired a private investigator, who learned that Shuman and Haider were married and lived together in the Cambridge apartment where Scuteri had visited Shuman.  When Scuteri contacted Shuman to confront her, he learned that she

2

had given birth to a child. Shuman agreed to a paternity test, which was performed in April 2016 and showed that Scuteri was not the father.

Scuteri then threatened to sue Shuman and Haider (defendants). In response, the defendants, through counsel, sent Scuteri a video recording of him having sex with Shuman in the Cambridge apartment; the defendants claimed to have received the video in the mail along with a warning not to share "[Shuman's] version" of the story. Scuteri believed that the defendants had conspired to secretly create the video in order to blackmail him. Scuteri learned that they had used similar schemes against other men.

Scuteri filed this action in July 2018, alleging intentional infliction of emotional distress (IIED), negligent infliction of emotional distress, and violations of State privacy and wiretapping statutes. In July 2019, the defendants filed their answer and counterclaims; they stated that they now lived in Paris. In December 2019, the judge defaulted them for failing to attend their depositions. She also found them in contempt of her prior order requiring them to appear at the depositions.[2] In 2022, after an assessment of damages hearing, a

---

[2] In this appeal the defendants make no separate argument that the judge erred in finding them in contempt.

3

second judge ordered a default judgment totaling $87,063.35. The defendants appealed.

Discussion. 1. Default as discovery sanction. The defendants argue that they were prevented from attending their depositions by circumstances beyond their control, so that the judge should not have defaulted them or denied their motion to set aside the defaults. We review the entry of a default as a discovery sanction for abuse of discretion. Greenleaf v. Massachusetts Bay Transp. Auth., 22 Mass. App. Ct. 426, 429 (1986). See Ceruolo v. Garcia, 92 Mass. App. Ct. 185, 188 (2017) (denial of motion to set aside default reviewed for abuse of discretion). Here, after reviewing in detail how the defendants stymied Scuteri's efforts to depose them, we see no abuse of discretion.

a. Discovery delays. Scuteri first noticed the defendants' depositions for September 2018. Because the defendants disputed service of process, those depositions were not held. Once the dispute was resolved against the defendants, Scuteri noticed Haider's deposition for early January 2019. That deposition was postponed due to defense counsel's unavailability. Scuteri then noticed Haider's deposition for late January 2019 and Shuman's for February 2019. The defendants responded with a motion to stay discovery and for a

4

protective order and a motion to dismiss for failure to state a claim.

After both motions were denied, Scuteri noticed Shuman's deposition for June 2019.  Defense counsel responded that Shuman could not travel from France on short notice and asked to reschedule the deposition for July or August.[3]  Scuteri asked defense counsel to suggest dates in mid-August for Shuman's deposition.  After some days passed without a response on that issue, in mid-July Scuteri noticed Shuman's deposition for early August 2019.  Defense counsel responded that Shuman was unavailable on the August date but would schedule the deposition if Scuteri agreed not to seek discovery of the defendants' sexual encounters and relationships with third parties.  Scuteri declined to agree and asked for a deposition date in advance of the noticed August date.  The defendants suggested none, and Shuman failed to appear for her deposition on the noticed date.

On August 14, 2019, Scuteri moved to compel the defendants to attend their depositions.  At an August 21 hearing on the motion, defense counsel opposed it, asserting that default warrants for the defendants' arrest had been issued in criminal

_____

[3] Defense counsel also stated her willingness to try to arrange an audiovisual deposition from France, if Scuteri agreed.  This was before the start of the COVID-19 pandemic made remote audiovisual communication commonplace.

5

cases pending against them,[4] that they feared arrest and physical harm if they returned to the United States, and that they could not come until the warrants were recalled. Defense counsel represented that the defendants had another attorney who was "working on" getting the warrants recalled, and had prepared a motion for that purpose, but had not yet filed it because he was just returning from vacation. On August 22, 2019, a judge issued an order (August 22 order) allowing the motion to compel and ordering the defendants to make themselves available for deposition at Scuteri's counsel's office by October 22, 2019.[5]

Scuteri then noticed Shuman's and Haider's depositions for October 11 and 22, 2019, respectively. Defense counsel responded that the arrest warrants had not yet been recalled; the separate attorney handling that issue had been unable to timely file a motion, and so the defendants "ha[d] retained" an experienced criminal defense attorney, who was "working on it." Defense counsel said this meant that Shuman could not appear on October 11 and her deposition should be held instead on October

---

[4] The cases apparently concerned the defendants' alleged theft or misuse of funds from the bank account of Shuman's former boyfriend.

[5] The order by its terms set a deadline of sixty days after its issuance, which would have been October 21, 2019. Because the parties' e-mail correspondence at the time referred to the deadline as October 22, however, as does the defendants' brief, we use that date herein.

6

22.  A week later, defense counsel stated that the criminal defense attorney had been retained to have the arrest warrants recalled but needed until the end of November 2019 to do so. Counsel attached an affidavit from the criminal defense attorney, which stated that the defendants had contacted her in late September and had agreed to pay her requested retainer; once she received the money, which had not yet occurred, she would act expeditiously to have the warrants recalled.

On October 28, Scuteri moved for contempt sanctions and for a default judgment against the defendants.  Scuteri's motion asserted that the criminal defense attorney had not yet been retained and that the criminal dockets reflected no efforts to have the warrants recalled.  The defendants moved to extend the time to appear for their depositions.

At a hearing on November 14, 2019, defense counsel reported that the defendants had not yet been able to pay the criminal defense attorney's retainer, because of uncertainty over how much of the retainer was for work on the criminal matters and how much was for separate civil matters involving another person.  The judge stated from the bench that the defendants had not complied with the August 22 order, and that the essential question before her was whether the noncompliance was due to an inability to comply, or instead was the defendants' fault, in

which case they should be defaulted.  The judge asked defense counsel whether she (the judge) could rely on counsel's written representation that, if no default entered, the depositions would go forward by November 30.  Defense counsel replied, "Yes."  Accordingly, the judge, while finding the defendants in contempt for failure to appear at their depositions within the time set by the August 22 order (or failing to seek modification of the order within the time stated for compliance), denied the motion for a default judgment and ordered the defendants to appear for their depositions by November 30, 2019, at the office of Scuteri's counsel.

Scuteri then noticed the depositions for November 22 and 26, 2019.  Defense counsel asked to reschedule the first deposition to November 25, to which Scuteri's counsel agreed.  On November 20, defense counsel reported that "the criminal matters [had] not yet been resolved" and sought to reschedule the depositions to the Wednesday before or the Friday or Saturday after Thanksgiving, Saturday being November 30.  Scuteri's counsel declined, stating that his office was closed on those days and that Scuteri intended to seek a default judgment.

Defense counsel herself then filed motions in the criminal cases to recall the arrest warrants, but the motions were denied

that same day.  The defendants then moved to extend the time for their depositions beyond November 30, in response to which Scuteri cross-moved for contempt sanctions and for the entry of default judgments.  At a December 2019 hearing on the motions, the judge noted that she remembered the earlier representations made to her, but that the criminal defense attorney still had not been retained, and that despite defense counsel's assertions that the defendants wanted to return to the United States and litigate the case, "actions speak louder than words at this point."  The judge found the defendants in contempt for failure to appear at their depositions in violation of her November 2019 order, and she ordered that defaults enter.[6]  In late June 2021 the defendants served, and in July they filed, a motion to set aside the defaults, which the judge denied in October 2021.[7]

---

[6] The judge's order directed that "default judgments" enter, perhaps because the rule governing discovery sanctions provides for "rendering a judgment by default against the disobedient party."  Mass. R. Civ. P. 37 (b) (2) (C), as amended, 390 Mass. 1208 (1984).  Here, however, no judgment entered until after the second judge held an assessment of damages hearing, and the standard for setting aside a default judgment would be more difficult for the defendants to meet than the standard for setting aside a default.  See Institution for Sav. in Newburyport & Its Vicinity v. Langis, 92 Mass. App. Ct. 815, 819-822 (2018).  We therefore refer to the judge's order as having directed the entry of defaults, and we assume in the defendants' favor that the standard for removing a default governs here.

[7] The motion had first been referred to a different judge, who denied it in August 2021 on the ground that he was not the

9

b.  Entry of defaults.  A judge may default a party for failure to attend the party's deposition.  See Mass. R. Civ. P. 37 (b) (2) (C), as amended, 390 Mass. 1208 (1984); Mass. R. Civ. P. 37 (d), 365 Mass. 797 (1974).  Although "[t]he law strongly favors a trial on the merits of a claim," Monahan v. Washburn, 400 Mass. 126, 129 (1987), we must balance "on one hand, a concern about giving parties their day in court, and, on the other, not so blunting the rules that they may be ignored with impunity" (quotation omitted).  Greenleaf, 22 Mass. App. Ct. at 429-430.  A default may be entered where, among other things, "there ha[s] been a clear violation of a court order with no . . . showing of inability to comply." Gos v. Brownstein, 403 Mass. 252, 257 (1988).  "Rule 37 (b) (2) requires that the sanction imposed must be 'just'; the due process clause also mandates such a standard." Keene v. Brigham & Women's Hosp., Inc., 56 Mass. App. Ct. 10, 20 (2002), S.C., 439 Mass. 223 (2003).

The defendants assert that they could not be defaulted "[u]nless the inability to comply with a discovery order [was] the result of wilfulness, bad faith, or fault." Keene, 56 Mass.

---

judge who originally ordered the default.  Because that original judge ruled on the motion in October 2021 without giving any deference to the August 2021 ruling, the correctness of the August 2021 ruling is moot and need not be discussed further.

10

App. Ct. at 18. They then argue that we should consider the five factors identified in Keene as bearing on the propriety of sanctions for failure to comply with a discovery order.[8] Keene, supra at 21.

Their reliance on Keene is misplaced, however, for two reasons. First, the judge here found that the "defendants failed to show in 2019 that their [noncompliance] . . . [was] due to any inability to comply." Second, the judge made an "implicit and warranted" finding of "wilfulness, bad faith, or fault." Gos, 403 Mass. at 257. Specifically, she found that "[t]heir failure to appear by the November 30, 2019 deadline, which their attorney last proposed and to which they had agreed, was one of several incidents that demonstrated their disregard of the court's orders and lack of respect for the judicial process," as well as constituting contempt of court. This sufficed to show willfulness as the term is used in the civil context. See Millis Pub. Sch. v. M.P., 478 Mass. 767, 775-776 (2018). Thus, we need not consider the Keene factors, because they "are not relevant to sanctions imposed for wilful conduct

---

[8] The Keene factors are "[1] the degree of culpability of the [offending] party; [2] the degree of actual prejudice to the [opposing] party; [3] whether less drastic sanctions could be imposed; [4] the public policy favoring disposition of the case on the merits; and [5] the deterrent effect of the sanction." Keene, 56 Mass. App. Ct. at 21.

11

or bad faith." Short v. Marinas USA Ltd. Partnership, 78 Mass. App. Ct. 848, 853 n.7 (2011).

Even if we considered those factors, we would see no abuse of discretion. First, the judge had ample basis to find the defendants culpable, particularly given their unjustified delay in retaining an attorney to seek the removal of the arrest warrants. The judge was not required to credit their litany of excuses for the delay.

Second, the prejudice to the plaintiff was clear: he could hardly proceed with his case, which involved highly disputed facts, without deposing the defendants, and the case had already been pending for seventeen months. Although the defendants suggest he could have gone to Paris to depose them, the judge could view that alternative as unduly burdensome. That is particularly so where much of the conduct at issue occurred in the Commonwealth.

Third, although the defendants suggest that a sanction less drastic than default was available, their brief fails to propose such a sanction, let alone one that would have been effective in vindicating both Scuteri's interest in litigating his case and the courts' interest in seeing their orders obeyed. Even if "a lesser sanction could have been devised . . ., it is not our

12

province to substitute our judgment for that of the judge." Short, 78 Mass. App. Ct. at 853.

Fourth, although the public policy in favor of resolving cases on the merits nearly always weighs against the entry of a default, the policy is not so strong as to outweigh the other factors that support the defaults here.

Finally, we are not persuaded by the defendants' argument that the defaults had no deterrent effect. The defendants claim that returning to the United States to be deposed would lead to their arrest and to physical violence against them while detained, and that the prospect of being defaulted would not deter any reasonable person from noncompliance with the judge's order to appear. Put differently, they argue that no one would risk physical harm merely to avoid being defaulted. But the judge could reasonably view this as a false dilemma. She could reasonably conclude that the defendants could have avoided both the defaults and any risk of arrest and consequent physical harm had they acted more expeditiously to seek the removal of the arrest warrants. In sum, she did not abuse her discretion in ordering the defendants defaulted.

c. Denial of motion to set aside defaults. We turn to the judge's order denying the defendants' late June 2021 motion to set aside the defaults. "For good cause shown the court may set

13

aside an entry of default." Mass. R. Civ. P. 55 (c), 365 Mass. 822 (1974). Good cause requires "a good reason for failing to . . . defend in a timely manner and . . . meritorious defenses." Johnny's Oil Co. v. Eldayha, 82 Mass. App. Ct. 705, 708 (2012). "Other factors typically considered are whether the default was wilful, whether setting it aside would prejudice the adversary, and the defaulted party's promptness in seeking relief." Institution for Sav. in Newburyport & Its Vicinity v. Langis, 92 Mass. App. Ct. 815, 822 (2018). "[C]ourts may [also] consider other relevant factors, including . . . the nature of the defendant's explanation for the default . . . [and] the good faith of the parties" (quotation and citation omitted). Ceruolo, 92 Mass. App. Ct. at 189. "[A]ny doubt should be resolved in favor of setting aside defaults so that cases may be decided on their merits" (citations omitted). Id. Good cause determinations are reviewed for abuse of discretion. Johnny's Oil Co., supra.

The good cause asserted in the defendants' motion was that, after the defaults entered in this case, the complaining witness in the criminal cases against them recanted his allegations, and the cases were dismissed in June 2020. The defendants thus argued that there was no longer any legal impediment to their returning to the United States for their depositions.

14

In denying the motion, however, the judge concluded that the relevant facts had not changed.  The documents forming the basis for the recantation were furnished to the complaining witness by the defendants themselves in February 2020.  Those documents thus were presumably already known to the defendants when they failed to appear in the criminal cases, failed to address the default warrants, and failed to comply with the judge's discovery orders in this case.  The judge referenced the defendants' "disregard of the court's orders and lack of respect for the judicial process" and the fact that more than one and one-half years had passed between the time the defaults entered and the time they moved to set the defaults aside.[9]  She concluded that the prejudice to Scuteri outweighed the potential harm to them if the defaults remained in place.

The defendants have shown no abuse of discretion in these determinations.  In particular, the judge could reasonably have given little weight to why the charges were allegedly filed, or what led to arrest warrants being issued, and more weight to the

---

[9] The dismissal of the criminal charges occurred in June 2020, during the early days of the pandemic.  Although that circumstance no doubt made it difficult for the defendants to travel immediately to the United States had they wished to do so, the judge could conclude that the pandemic did not explain the additional delay of one year before the defendants served their motion to set aside the defaults in late June 2021.

defendants' failure, despite their representations to her at the time, to take prompt and effective steps to have the warrants recalled so that they could be deposed.[10]

2. Statute of limitations. The defendants argue that Scuteri's IIED claim was time barred, and so the second judge erred by awarding damages on that claim. They assert that the claim accrued when Shuman told Scuteri he was the father of her child in June 2015, yet the complaint was not filed until July 2018, more than three years later, and thus outside the limitations period established by G. L. c. 260, § 2A. For three reasons, we reject this argument.

First, the argument was not made to the second judge, either in the defendants' pre-damages-hearing bench memorandum, or at the hearing itself, or in their posthearing bench

---

[10] She could also have considered internal contradictions in the affidavit of the complaining witness filed in support of the defendants' motion. That witness claimed that Scuteri's counsel in this case had told him in August 2018 that counsel's strategy "was to exploit the [defendants'] inability to be easily deposed in person in order to secure a default judgment against them. He said [they] would steer clear of depositions . . . to avoid the possibility of being arrested." Yet the witness also stated that it was not until November 2018 that he noticed the defendants' withdrawals from his bank account, and only after that did he call the police, triggering the criminal charges against the defendants and the issuance of warrants for their arrest in March 2019. The witness did not explain how Scuteri's counsel could have known in August 2018 that arrest warrants for the defendants would issue seven months later.

16

memorandum.[11]  Although the defendants made the argument in their 2019 motion to dismiss the complaint, the argument was not addressed in the order denying that motion, and it was never renewed in connection with the June 2022 damages hearing.  The defendants "did not sufficiently raise the issue below and [are] therefore barred from raising it on appeal."  Boss v. Leverett, 484 Mass. 553, 562 (2020).

Second, even if they had attempted to raise it, the defaults would have made the argument moot at the damages phase of the case.  The defendants attempt to raise it now under the principle that, although a default means the factual allegations of a complaint are accepted as true for purposes of establishing liability, "even after default it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law" (citation omitted).  Productora e Importadora de Papel, S.A. de C.V. v. Fleming, 376 Mass. 826, 834-835 (1978).  Yet a complaint need not affirmatively allege facts showing that the claims it asserts are timely in order to state a claim for relief.  See Cannonball Fund, Ltd. v. Dutchess Capital Mgt., LLC, 84 Mass. App. Ct. 75, 90 (2013).  Rather, a

---

[11] We take notice of those memoranda notwithstanding their absence from the defendants' record appendix.  See Mass. R. A. P. 18 (a) (1) (D), as appearing in 491 Mass. 1603 (2023).

17

statute of limitations creates an affirmative defense, to be pleaded in a defendant's answer. See Mass. R. Civ. P. 8 (c), 365 Mass. 749 (1974). Failure to do so waives the defense. See Halstrom v. Dube, 481 Mass. 480, 486 (2019). Even if the defendants' answer here had asserted the defense -- which it did not -- the complaint itself was not deficient for failure to allege facts showing the IIED claim was timely. The defaults rendered any time-bar defense unavailable.

Finally, the defense fails on the merits. Under the discovery rule, a claim generally accrues "when a plaintiff discovers, or any earlier date when she should reasonably have discovered, that she has been harmed or may have been harmed by the defendant's conduct." Bowen v. Eli Lilly & Co., 408 Mass. 204, 205-206 (1990). The type of harm required for an IIED claim is harm that is "severe and of a nature that no reasonable [person] could be expected to endure it" (quotations and citation omitted). Agis v. Howard Johnson Co., 371 Mass. 140, 145 (1976). Here, as the second judge recognized when assessing damages, "some degree of anxiety is normal, and therefore not recoverable, when pregnancy results from a sexual encounter with a stranger or near-stranger." It was only when Scuteri learned that the defendants' claim of his paternity was knowingly false, and when they threatened him with a video of him having sex with

18

Shuman, that he suffered harm of the type sufficient to support an IIED claim.  The complaint alleged that those events occurred in or after April 2016, which was less than three years before the complaint was filed.  The IIED claim was therefore timely.

Judgment affirmed.

By the Court (Henry, Sacks & Singh, JJ.[12]),

Clerk

Entered: February 28, 2025.

---

[12] The panelists are listed in order of seniority.

19