NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-311

LEYTON USA, INC.

vs.

COC AEROSPACE, INC.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The primary issue in this appeal is whether a Superior Court judge abused her discretion in entering a default judgment for the plaintiff, Leyton USA, Inc. (Leyton), and against the defendant, Commerce Overseas Corporation, doing business as COC Aerospace, Inc. (COC). COC argues, inter alia, that the record does not support the judge's determination that COC's alleged discovery violations were made willfully and in bad faith, the judge abused her discretion in denying COC's motion for reconsideration,[1] the judge erred in failing to conduct a damages

_____

[1] As discussed further below, COC did not appeal from the order denying the motion for reconsideration.

assessment hearing, and the judgment amount was excessive.  We affirm.

Background.  COC is a company engaged in developing advanced technologies related to extending the life of aging aircrafts.  Leyton is a consulting firm that provides, among other things, tax advice to research-oriented entities regarding the maximization of research and development tax credits.  On or about January 25, 2019, COC and Leyton entered into a written engagement agreement (contract) providing, in essence, that Leyton would analyze COC's research projects for certain tax years and identify research and development tax credits for COC, and COC would pay Leyton a fee equal to twenty-five percent of the identified tax credits.  On June 17, 2019, Leyton provided a report to COC purporting to identify a total of $236,673.19 in tax savings, along with two invoices totaling $59,168.30.  COC disputed the validity of the contract, and the amount owed, and refused to pay the invoices.  On December 7, 2020, Leyton filed a complaint against COC in the Superior Court claiming breach of contract.  On October 8, 2021, COC filed its answer and counterclaims for fraud, breach of contract, and rescission.[2]

---

[2] COC labeled its responsive pleading as its "answer, affirmative defenses, and cross-claims."  It is not disputed, however, that the "cross-claims" constituted counterclaims under the Massachusetts Rules of Civil Procedure.  See Mass. R. Civ. P. 13, as amended, 423 Mass. 1405 (1996).

2

As the litigation proceeded, COC failed to comply with various discovery requests propounded by Leyton.  This caused Leyton to file a series of motions to compel, which were allowed by a Superior Court judge (first judge).  Nonetheless, COC continued to ignore or failed to "fully or satisfactorily" comply with various discovery requests and the court orders.[3]  In addition, COC's chief executive officer and owner, Christopher J. Garville, testifying as COC's designee pursuant to Mass. R. Civ. P. 30 (b) (6), as appearing in 489 Mass. 1401 (2022), left the deposition three hours after it commenced and before it had been completed because, in his words, "I have to run my company. I've got to support my business and my family, but I don't have anymore time."  After Leyton filed a motion to compel testimony, the parties ultimately rescheduled the continuation of the rule 30 (b) (6) deposition.  A few days prior to the continued deposition, COC's counsel informed Leyton's counsel that "Mr. Garville will make himself available for the deposition[]
. . . .  To minimize his costs, Mr. Garville has asked me not to attend the deposition."  When the deposition commenced a few

---

[3] We need not delineate the myriad failures, partial compliance, or noncompliance by COC regarding its discovery obligations.  Instead, we note that the record supports the first judge's findings and determination that COC failed to "fully or satisfactorily" comply with its discovery obligations and multiple court orders.

3

days later, Garville refused to proceed because his "counsel is not present."

On March 1, 2022, Leyton served its motion for summary judgment on COC. Prior to the deadline for COC to serve its opposition to the motion, COC's counsel filed a motion to withdraw. Following a hearing on the motion to withdraw, a different Superior Court judge (second judge) set a deadline of September 8, 2022, for COC to obtain new counsel. COC failed to meet the deadline, and received an extension to November 16, 2022, which was the date set for a hearing on the motion for summary judgment. On that date, new counsel entered an appearance for COC and requested additional time to file an opposition to the motion. The second judge then issued an order in which she discussed many of COC's failures to comply with its discovery obligations, and stated as follows:

> "[P]ermitting COC to submit any materials in opposition to summary judgment when it is in egregious violation of its discovery obligations would be grossly unfair to Leyton. The Court has an interest in seeing this case resolved on its merits; at the same time, COC's violation of its discovery obligations and the Court's discovery orders -- most of which occurred while it was represented by counsel -- cannot be countenanced." (Footnote omitted.)

As a result of COC's conduct, the second judge issued an order that required COC to produce documents identified in Leyton's motion to compel; ordered Garville to resume and complete his rule 30 (b) (6) deposition; set a renewed schedule for serving

4

and filing summary judgment papers; held in abeyance a motion for sanctions filed by Leyton, "pending further proceedings"; and ordered that "[i]f COC does not complete any of the actions required of it . . . by the assigned deadline, then Leyton may file . . . a Motion for Judgment by Default for Failure to Comply with this Order . . . ."

On March 29, 2023, after COC failed to provide all of the requested documents and Garville failed to prepare for his rule 30 (b) (6) deposition within the meaning of the rule and the spirit of the second judge's order, Leyton filed a second motion for default judgment.[4]  On May 10, 2023, the first judge held a hearing on the second motion for default judgment.  On August 2, 2023, she issued a comprehensive memorandum and order allowing the motion, concluding in relevant part,

> "[Leyton's] Second Motion for Judgment by Default for
> Failure to Comply with Court Orders is ALLOWED.  [Leyton]
> is entitled to judgment in its favor on its single breach
> of contract claim against [COC] due to [its] continued
> discovery violations that were made wilfully and in bad
> faith.  Judgment shall enter in favor of [Leyton] and
> against [COC] on [Leyton's] breach of contract claim.  It
> is further ORDERED that [COC]'s counterclaims against
> [Leyton] be DISMISSED.

---

[4] The motion for default judgment was styled as Leyton's "Second Motion for Judgment by Default for Failure to Comply with Court Orders."  The record before us does not clearly establish the filing of the first motion for default judgment; however, Leyton did request that judgment enter in its favor in its earlier-filed motion for sanctions.  To be consistent with the trial court docket and orders, we use the term "second motion for default judgment" herein.

"Counsel shall appear at a conference to be scheduled by the Clerk to inform the Court with regard to scheduling a hearing for assessment of damages. In addition, [Leyton] shall file a petition for attorney's fees and costs."

On September 5, 2023, COC filed a petition pursuant to G. L. c. 231, § 118, seeking review of the first judge's order allowing the second motion for default judgment. A single justice of this court dismissed the petition because it was not timely filed within the thirty-day jurisdictional time limit.

On September 29, 2023, COC filed a motion for reconsideration in the Superior Court. On October 12, 2023, while COC's motion for reconsideration was pending, Leyton filed a "Notice of Hearing on Assessment of Damages/Default Judgment." On December 4, 2023, a third Superior Court judge (third judge) allowed Leyton's petition for attorney's fees and assessment of damages. On December 5, 2023, a "Judgment by Default upon Assessment of Damages" entered, awarding Leyton $237,183.57, inclusive of damages, attorney's fees, costs, and interest.

On January 3, 2024, COC filed a notice of appeal from the judgment. On January 10, 2024, COC filed a motion to vacate the judgment and schedule an assessment of damages hearing. The first judge denied that motion on January 12, 2024. Also on January 12, 2024, the first judge denied COC's motion for reconsideration. COC did not file an appeal therefrom.

6

Discussion.  COC contends, in essence, that the first judge erred in entering the default judgment because there was no evidence of deliberate or willful disregard of court orders by COC, that the first judge erred in relying exclusively on false or misleading representations by Leyton's counsel to justify the default judgment, and that even if a sanction was necessary, a lesser one was available.[5]  The claims are unavailing.

Where "a party fails to obey an order to provide or permit discovery," a judge may impose sanctions up to and including "dismissing the action."  Mass. R. Civ. P. 37 (b) (2) (C), as amended, 390 Mass. 1208 (1984).  Such dismissal is an "extreme sanction," which generally must be "predicated on a finding of wilfulness or bad faith."  Keene v. Brigham & Women's Hosp., Inc., 439 Mass. 223, 236 (2003).  Our review of discovery sanctions, including defaults, is governed by the well-established abuse of discretion standard.  See Greenleaf v. Massachusetts Bay Transp. Auth., 22 Mass. App. Ct. 426, 429 (1986).  "We do not consider [a judge's] discretion abused unless its exercise has been characterized by arbitrary

_____

[5] COC also claims that the judgment was "procedurally defective" because it was entered on a "form that states that COC failed to answer or otherwise defend," which is "clearly erroneous."  Assuming arguendo that that was a "defect," COC makes no argument that it suffered prejudice, and provides no authority to support the proposition that such a defect, without more, requires reversal or warrants appellate relief.

7

determination, capricious disposition, whimsical thinking, or idiosyncratic choice."  Id.  See L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014) (abuse of discretion occurs where judge made clear error of judgment in weighing factors relevant to decision "such that the decision falls outside the range of reasonable alternatives").

Here, we discern no abuse of discretion.  Following a hearing on Leyton's second motion for default judgment, the first judge issued a comprehensive memorandum and order delineating the myriad failures by COC to comply with discovery requests and orders.  The record supports the first judge's findings that COC refused to provide documents sought by Leyton; failed to comply with several court orders regarding discovery; failed to provide a prepared designee for depositions pursuant to Mass. R. Civ. P. 30 (b) (6); forced Leyton to file repeated motions to compel, which were allowed or unopposed; and acted in a manner from which bad faith could be (and indeed was) inferred.  Furthermore, COC's principal told counsel to refrain from attending his deposition but then refused to proceed with the deposition because counsel was not present.[6]

---

[6] COC disputes the accuracy of the first judge's findings with respect to his refusal to participate in the continued deposition.  We have reviewed the entire record and cannot conclude that the judge's findings are clearly erroneous or unsupported by the record.

In addition, the first judge did not erroneously rely on Leyton's representations in making her decision. Rather, her findings reflect consideration of the myriad filings and rulings in the record. Moreover, the first judge's conclusions were supported by the second judge's written findings and order -- likewise supported by the record before us -- that COC violated "its discovery obligations and the Court's discovery orders -- most of which occurred while it was represented by counsel."

Furthermore, the first judge's decision not to impose a lesser sanction was not an abuse of discretion. As discussed above, the defendant repeatedly failed to comply with discovery requests and court orders and had been "warned [] that this outcome could occur if discovery violations continued." Even if a lesser sanction could have been devised, "it is not our province to substitute our judgment for that of the judge." Short v. Marinas USA Ltd. Partnership, 78 Mass. App. Ct. 848, 853 (2011). This is not a case where the first judge failed to consider other options or ignored the gravity of the sanction ultimately imposed. To the contrary, she "recognize[d] that entering default judgment is the ultimate sanction and [did] not take this option lightly." Her thorough and reasoned analysis reflects consideration of the requisite factors, and we do not discern any abuse of discretion on the record before us.

9

COC also argues on appeal that the first judge abused her discretion in denying its motion for reconsideration.  In that motion, COC argued that certain key facts were not before the first judge when she ruled on the second default motion; that judgments by default are disfavored; and that a lesser sanction was available.  COC, however, did not file a notice of appeal from the denial of the motion to reconsider.[7]  A postjudgment order on a motion to reconsider is treated the same as any order on a postjudgment motion, and a notice of appeal specifically including the denial of that motion must be filed to preserve the issues raised therein.  As a result, these arguments are not properly before us.  See Visnick v. Hawley, 69 Mass. App. Ct. 901, 902 (2007).[8]

The defendant also appears to argue that it suffered prejudice from the Superior Court's failure to hold an assessment of damages hearing.  Where the damages, as here, involved claims for a sum certain (or were susceptible of

---

[7] Although the default judgment entered prior to the first judge's ruling on the motion for reconsideration, COC was still required to file a notice of appeal from that denial to raise that issue on appeal.  See Custom Kits Co. v. Tessier, 97 Mass. App. Ct. 385, 388 n.7 (2020); Mass. R. A. P. 4 (a) (3), as appearing in 481 Mass. 1606 (2019).  See also Mass. R. A. P. 3 (c) (1), as appearing in 491 Mass. 1601 (2023).

[8] Many of the issues raised on appeal were raised in the Superior Court solely by way of COC's motion for reconsideration, and thus are not properly before us.

10

mathematical calculation), the claim has no merit.  See

generally <u>National Grange Mut. Ins. Co</u>. v. <u>Walsh</u>, 27 Mass. App.

Ct. 155, 157-158 (1989).[9]

<u>Judgment affirmed</u>.

By the Court (Blake, C.J.,
Neyman & Grant, JJ.[10]),

*Paul Little*

Clerk

Entered:  March 14, 2025.

---

[9] Leyton contends that attorney's fees on appeal are warranted by the contract, which includes a provision requiring COC to pay "costs of collection (including legal fees)" for payments not timely made by COC.  Leyton shall file a verified and itemized application for such fees and costs within fourteen days of the date of this decision, and COC will have fourteen days thereafter in which to file any opposition to the amounts requested.  See <u>Fabre</u> v. <u>Walton</u>, 441 Mass. 9, 10-11 (2004).

[10] The panelists are listed in order of seniority.